## ULLRICH v. NEW YORK, N. H. & H. R. CO.

### (District Court, S. D. New York. February 17, 1912.)

1. REMOVAL OF CAUSES (§ 3*)—EMPLOYER'S LIABILITY ACT—CONSTRUCTION.

Employer's Liability Act (Act Cong. April 5, 1910, c. 143, 36 Stat. 291) § 6, provides that an action may be brought for injuries to, or death of, employés within such act in a Circuit Court of the United States in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing the action, but that the jurisdiction of the courts of the United States shall be concurrent with those of the several states, and no case arising under the act and brought in any state court of competent jurisdiction shall be removed to any court of the United States. *Held* that, where an action under such statute is brought in a state court, it is not removable in spite of the diversity of citizenship of the parties.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 4, 5; Dec. Dig. § 3.*]

2. REMOVAL OF CAUSES (§ 3*)—EMPLOYER'S LIABILITY ACT—OTHER CAUSES OF ACTION.

Where the facts pleaded in the complaint in an action for death of a servant showed a cause of action under Employer's Liability Act (Act Cong. April 5, 1910, c. 143, 36 Stat. 291) § 6, and also a cause of action under Labor Law N. Y. (Consol. Laws 1909, c. 31) § 200 et seq., and a cause of action at common law, it was nevertheless a "cause arising" under the employer's liability act, and, having been brought in the state court, was not removable as provided by Employer's Liability Act, § 6, notwithstanding the existence of diversity of citizenship, and the fact that, if it had stated a cause of action at common law or under the New York statute, it would have been removable.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 4, 5; Dec. Dig. § 3.*]

At Law. Action by Elizabeth A. Ullrich, as administratrix of the goods, chattels, and credits of John F. Ullrich, against the New York, New Haven & Hartford Railroad Company. On motion to remand. Granted.

The above-entitled action was commenced on the 5th day of January, 1912, by a summons and complaint in the Supreme Court of the state of New York for the county of Westchester. On petition of the defendant it was removed to this court on January 25, 1912. The defendant thereafter filed an answer on the 25th day of January, 1912. The plaintiff now moves for remand of the case, on the ground that under section 6 of the United States employer's liability act, passed April 5, 1910 (36 Stat. 291, c. 143), the case should not have been removed. That section is as follows:

"Under this act an action may be brought in a Circuit Court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states, and no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The complaint or declaration of the plaintiff is as follows:

"The plaintiff, complaining of the defendant, alleges:

"(1) That at all the times hereinafter mentioned the defendant was, and it now is, a foreign Connecticut state corporation, and as such operates, owns, and maintains a railroad in New York and Westchester counties, and in the yards known as the 'Westchester Yards,' and on October 20, 1911, plaintiff's intestate, John F. Ullrich, was injured while in defendant's employ, while said defendant and said intestate were then and there engaged in interstate commerce between the different states of the United States, and intestate was run over by defendant's train, which was then and there carrying and transporting interstate commerce, and the employés working in connection therewith were engaged in interstate commerce; and thereafter and on or about December 29, 1911, this plaintiff was appointed administratrix of the goods, chattels, and credits of the said John F. Ullrich, deceased, by the surrogate of the county of Westchester, New York, in which said county the said deceased resided at the time of his death; and thereafter and on or about January 2, 1912, plaintiff caused to be served upon the defendant a notice, setting forth the time, place, and cause of plaintiff's intestate said injury and death while in defendant's employ on October 20, 1911.

"(2) That on October 20, 1911, while the plaintiff's intestate was in defendant's employ as a brakeman in defendant's Westchester Yards, New York, he was struck and run over by defendant's freight train and sustained injuries which caused his death, and this was caused by the negligent manner in which the defendant's employés having the then control of the engines, cars, and signals at said point conducted themselves in the management of said cars, engines, and signals, and was also caused by the negligence of the defendant's officers, servants, and employés, and was also caused by defects in defendant's ways, works, machinery, appliances, plant, cars, engines, tracks, roadbed, and signals at said place, and by the defendant's neglect in failing to formulate, promulgate, and enforce proper rules and regulations for the safety of the intestate and his coemployés, in that defendant conducted its work by unsafe and dangerous methods, and did have an improper signal system, and conducted its work by insufficient signals, material, and men, in that defendant, charged with superintendence, control, and command over the plaintiff's intestate and his coemployés, negligently and carelessly conducted itself in and in connection with said acts, control, and command, as a result of all of which, plaintiff's intestate was struck and run over by said train, and sustained injuries which caused his death, all being caused without any negligence on the part of the plaintiff's intestate in any wise contributing thereto.

"(3) That said deceased left him surviving, as his heirs at law and next of kin, this plaintiff, his widow, Frederick, John, William, and Ferdinand, his sons, all of whom have been damaged by his death in the sum of fifty thousand dollars ($50,000).

"Wherefore plaintiff demands judgment against the defendant for the sum of fifty thousand dollars ($50,000), and the costs and disbursements of this action."

Thomas J. O'Neill, for plaintiff.
Nath. S. Corwin, for defendant.

HAND, District Judge (after stating the facts as above). [1] The first point is whether the act of April 5, 1910, meant to prohibit removal, in spite of the fact that the defendant was a citizen of a different state from the plaintiff. I think it did, though the matter is not perfectly clear. The language of the act is:

"No case arising under this act and brought in any state court of competent jurisdiction shall be removed."

193 F.—49

One would have rather expected the words to be substantially:

"The defendant shall not be entitled to remove because the plaintiff relies upon any rights created hereby"

—if Congress meant removal to be still possible in such cases, when there was diversity of citizenship. That would have prevented the removal merely by virtue of the fact that the suit arose under a law of the United States—Judiciary Code (Act March 3, 1911, c. 231) § 28, 36 Stat. 1094—but would still have allowed a nonresident defendant to remove. The words used prohibit absolutely any removal when the "case" is of a given kind, and if the intent had been less absolute than the language, I think Congress would have adopted the prohibition to the scheme of removal as it has long existed under the earlier forms of the present section 28 of the Judiciary Code. It was well known that that action set forth the various grounds of removal, and if the intent was to prohibit removal only for one of those grounds, I should have looked for some use of its language, or at least of the classification there contained. As matter of mere statutory interpretation, I think the plaintiff is right.

Again, consider the actual subject-matter of the section. The employer's liability act affects interstate railroads exclusively, and such railroads are commonly organized in only one state. As now organized, such interstate railroads usually operate in a number of other states than those in which they are organized. It is hardly likely that Congress meant so absolute a prohibition to apply only in the state of the railroad's organization. The apparent purpose at least of the act was to prevent the defendant from invoking a federal court's construction of the plaintiff's right, though it was created by a federal law. The plaintiff was to have the choice, not the defendant, as to whether the national tribunal should interpret the national will. That purpose would be in fact substantially defeated in most of the cases to which it applied, if the defendant could remove for diversity of citizenship. It is theoretically possible that Congress might have thought that state tribunals would fairly administer a federal right, but might be moved by local bias against a nonresident, and that would have some force if the whole history of our legislation had not coupled both grounds of removal together, but from the Constitution itself it has done so, and it, therefore, is remote from our legal traditions to impute such a distinction to Congress. Of course, the whole existence of inferior federal courts rests solely upon the possibility that state courts may not be impartial, and while such possible partiality might be sectional, without being antinational, to import such a distinction is unhistorical. Congress, in depriving railroads of the right to invoke the National courts, did not, therefore, I believe, entertain the distinction that, while the state courts might do them full justice when they were organized within the state, they would not do them justice when they were not. The state in which a railroad is organized has no such different sentiments towards it on that account as would make such a distinction have any but a fictitious bearing upon the question. I think, therefore, that the section includes a case of diversity of citizenship.

[2] The second point is whether the "case arises" under the employer's liability act. Certainly the complaint contains all the necessary allegations to make it so arise. It is not necessary that the pleading should refer to the law which makes a "right" out of the facts so alleged. Generally that is bad pleading, and I think it would have been such here. Judge Maxey so held before section 6 was amended (Clark v. Southern Pacific Co. [C. C.] 175 Fed. 122), and I have found no case which requires that a plaintiff, in order to show jurisdiction in a federal court, shall allege that his right arises under a specified federal law, provided he alleges the facts which show that it does in fact. The case is different from taking a constitutional point in the state court for writ of error to the Supreme Court.

There remains a theoretical point which the case sharply raises. The complaint alleges, not only those facts upon which depends the "right" created by the United States employer's liability act, but also those upon which depend another "right," created by Labor Law N. Y. § 200 et seq., and, moreover, those upon which the common-law "right" depends. Now, were it not for the fact that the federal "right" was alleged, the defendant could come into a federal court, paradoxical though that result may seem. How, then, can the defendant obtain its right to a trial in a federal court upon the common-law and New York statutory "rights"? An obvious way would be to compel the plaintiff either to disclaim any "right" in this action, except the federal, or in the alternative to separate his action into two parts, and remand one, while I kept the other. The result of the latter alternative would be to have two actions brought by the same plaintiff, pending at the same time, to recover for the same injuries, caused by the same accident. I purposely leave the word "accident" vague, because in one case the cause of the injury might be a fellow servant, in the other a defective track, and therefore the causes are not necessarily the same. However, it is a question whether the meaning of Congress should include the subdivision of a "case" into such "causes of action." I think not. I believe that the "case" for all purposes arises under the federal employer's liability act, when the plaintiff alleges that he was himself engaged in interstate commerce and is injured by an interstate railroad. It is immaterial, as I regard it, to consider nicely whether the employer's liability act creates a new "right," or whether it changes the incidents of the "right" at common law, or under the New York labor law; nor do I mean to suggest that the plaintiff might not succeed upon those latter "rights," though he failed to show that he was engaged in interstate commerce. It is enough to avoid the jurisdiction of this court for all purposes that he has alleged that he was engaged in interstate commerce. An analogy exists for this interpretation in those cases in which a federal court, having one ground of jurisdiction, can dispose of the whole case, though it involves other matters (Railroad Co. v. Mississippi, 102 U. S. 135, 26 L. Ed. 96), as, indeed, in those in which the jurisdiction remains, though the allegations of jurisdiction prove unsupported (City Railway Co. v. Citizens' Steel Railroad Co., 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114). So here, though

the defendant could remove, were it not for the allegations which bring the case within the employer's liability act, I think it could not have been the intention of Congress to sever three such knitted causes of action, and bring two into this court, while the other stayed where it was. The "case" arose, I think, for all purposes under the act.

The motion to remand is granted.

NOTE.—District Judges HOLT and HOUGH have both read the foregoing opinion and agree with the conclusion reached.