## MAYFLOWER INDUSTRIES v. THOR CORP. et al.

### No. 10205.

United States Court of Appeals
Third Circuit.

Argued June 20, 1950.

Decided Aug. 8, 1950.

Rehearing Denied Sept. 11, 1950.

See also 182 F.2d 800.

McLaughlin, Circuit Judge, dissented.

Gilbert W. Oswald, Philadelphia, Pa. (Bernard G. Segal, James J. Leyden and Edward W. Mullinix, all of Philadelphia, Pa., Ruback, Albach & Weisman, Newark, N. J., and Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on the brief), for appellant.

Walter C. Lundgren, New York City, (Thomas J. Brogan, Jersey City, N. J., Franklin B. Lincoln, Jr., New York City, Justin A. Stanley, Chicago, Ill., Thomas B. K. Ringe, Philadelphia, Pa., and Lundgren, Bartels & Lincoln, New York City, and Isham, Lincoln & Beale, Chicago, and Morgan, Lewis & Bockius, Philadelphia, Pa., on the brief), for Thor Corp.

Richard J. FitzMaurice, Orange, N. J., for Teldisco.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This appeal has been taken from an interlocutory order of the District Court for the District of New Jersey denying a preliminary injunction. Section 1292(1)

of title 28 of the United States Code, 28 U.S.C.A. § 1292(1), authorizes an immediate appeal from such an order.

■ With the case thus properly before us, a preliminary question arises whether this litigation was removable from the state court in which it originated. Although the denial of a motion to remand itself would not support an interlocutory appeal, the question of removability is jurisdictional and therefore is before us for consideration once it appears that the case is properly here for review of an appealable order. Mansfield C. & L. M. R. Co. v. Swan, 1884, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462; Deckert v. Independence Shares Corp., 1940, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189.

This action was brought originally in a New Jersey court by Mayflower, a New Jersey corporation, against Thor, an Illinois corporation, and Teldisco, a New Jersey corporation. The complaint was based on an alleged breach of a distributorship contract under which Mayflower was the exclusive distributor of Thor's products in New Jersey, and one of two Thor distributors in New York and Pennsylvania. Mayflower alleged that, without cause or legal justification, Thor cancelled this contract. It is further alleged that Teldisco, with knowledge of the improper cancellation, entered into an agreement with Thor to act as its New Jersey distributor, and commenced acting in that capacity immediately after the cancellation. It is also alleged that Teldisco's "entry into said contractual arrangement with the defendant Thor corporation [together with Teldisco's sales campaign in pursuance of this agreement] constitutes an unlawful, wanton and malicious conspiracy by both defendants to injure the plaintiff in its lawful business and to deprive the plaintiff of the fruits thereof." Injunctive relief and damages are asked against both defendants.

On Thor's initiative, the cause was removed to the United States District Court for the District of New Jersey. A motion for remand was denied. A further motion by Mayflower for a preliminary injunction was denied. Thereupon this appeal was taken.

The jurisdictional issue is decisive and we consider it alone. There is no federal jurisdiction because the cause was not removable.

The controversy between the two New Jersey corporations, Mayflower and Teldisco, standing alone would not be removable. The Mayflower-Thor controversy would. Therefore, the present case is not removable unless the Mayflower-Teldisco controversy and the Mayflower-Thor controversy present "separate and independent claims or causes of action".

Section 1441(c) of the Judicial Code [1] provides, in relevant part, as follows: "Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed * * *."

■ This language was intended to and does narrow the right to remove as it had existed under the Judicial Code of 1911, 36 Stat. 1094, where all that was needed, in addition to diversity, was a separable controversy. Pullman Company v. Jenkins, 1939, 305 U.S. 534, 538, 59 S.Ct. 347, 83 L.Ed. 334; see Moore's Commentary on the U. S. Judicial Code (1949) page 239. "Separate" alone might connote no more than the separability of controversies for purposes of litigation. But that is not enough here. We believe the adjectives "separate and independent" were used in conjunction to convey some meaning which would not have been apparent from the use of one adjective alone. At least their common underlying connotation of absence of some significant connection is emphasized. In the context of the present litigation it is enough to say that a consideration of the interests of the parties and the relationship of the two claims in subject matter and essential factual basis lead to the conclusion that the claims of May-

1. 62 Stat. 938, 28 U.S.C. § 1441(c) (Supp.1950), 28 U.S.C.A. § 1441(c).

flower against Thor and Teldisco do not constitute "separate and independent" causes of action within the meaning of Section 1441(c).

As revealed by the record, the business reality is that a manufacturer has changed distributors in a certain area, the operative transactions occurring practically simultaneously. From the point of view of the complainant, Mayflower, the termination of its distributorship and the substitution of Teldisco as sole New Jersey distributor of Thor's product immediately thereafter are at most but two aspects of a single economic injury. This is true whether or not Mayflower's conclusion with reference to a "conspiracy" between Thor and Teldisco is deemed on its face a legally sufficient pleading of this basis of liability.

It is even more significant that the circumstances and alleged illegality of the termination of Mayflower's distributorship by Thor constitute the principal controversial issue in the establishment of any cause of action by Mayflower against Teldisco. There is almost complete coincidence of the basic operative facts. Thus analyzed, the claims are not separate and independent.

█ For present purposes, this analysis and the interests and relationships it reveals are particularly important because the avoidance of possible local prejudice against outsiders has been a principal and justifying end of diversity jurisdiction from its beginning.[2] In deciding under what circumstances two claims combined in one suit are "separate and independent" so that the domestic controversy does not impair the removability of the entire litigation from a state court to a court of the United States, it is proper to consider the ends to be achieved by removal of the one claim which standing alone is removable.

Here the controversy arises because a foreign corporation undertook to deprive one New Jersey corporation of an economically advantageous relationship and to confer the benefits in question upon another New Jersey corporation. What one domestic corporation loses and complains of, another domestic corporation gains and defends in the same law suit. Thus the interplay of interests is such that when the two claims are litigated together the foreign corporation is protected from any local prejudice against an outsider which might exist if it alone were sued.

For these reasons we conclude that this case was not removable and thus the matter of granting or denying a preliminary injunction should not have been adjudicated by the district court. In these circumstances, the order appealed from must be vacated and the case remanded to the district court with instructions to remand to the state court of original jurisdiction.

It will be so ordered.

GOODRICH, Circuit Judge, concurring.

This concurrence represents no disagreement with what Judge Hastie has said but since the statutory language we are concerned with is new and the problem is of some importance, it is thought that the presentation of another point of view on the same question may be helpful.

Since there is diversity of citizenship between Mayflower and Thor but not between Mayflower and Teldisco, our problem under Section 1441(c) of the Revised Title 28 is to determine whether there is pleaded against Thor a cause of action which is "separate and independent" from

2. See Marshall, Ch.J. in Bank of United States v. Deveaux, 1809, 5 Cranch 61, 87, 9 U.S. 61, 3 L.Ed. 38: "The judicial department was introduced into the American constitution under impressions, and with views, which are too apparent not to be perceived by all. However true the fact may be, that the tribunals of the state will administer justice as impartially as those of the nation, to parties of every description, it is not less true that the constitution itself either entertains apprehension on this subject, or views with such indulgence the possible fears and apprehensions of suitors, that it has established national tribunals for the decision of controversies between aliens and a citizen, or between citizens of different states." But see Frank, Historical Bases of the Federal Judicial System, 13 Law & Contemporary Problems 3, 28 (1948).

that which is pleaded against Teldisco. While the words of the statute are not self-explanatory and the point not perfectly clear, it seems to me the more logical view is that this case does not present a removable controversy. Counsel for both sides say that Bentley v. Halliburton Oil Well Cementing Co. 5 Cir., 1949, 174 F.2d 788, the only appellate case dealing with the new removal statute, was correctly decided. I agree and think we have here the same situation which faced the Fifth Circuit in the Bentley case, although upon a somewhat more complicated set of facts.[1]

In that case there were two tortfeasors whose combined negligence invaded the right of the plaintiff to be free from negligent injury to his person. Plaintiff could have sued either and got a judgment. Or he could have sued them successively and procured a judgment first against one and then against the other. Restatement, Judgments § 94. But the satisfaction of either judgment would have settled the plaintiff's rights. Restatement, Judgments § 95. He could have proceeded no further against anybody. The conclusion I draw from this is that the invasion of one legally protected interest, i. e., the right to personal security, was the thing which was involved, and since it all occurred in the same transaction the rights of the plaintiff against the various defendants were not "separate and independent." Hence, the controversy was not removable.

The joint tortfeasor situation involved in the Bentley case would not have presented a removable controversy under the Judicial Code as it read prior to the 1948 revision. McAllister v. Chesapeake & Ohio R. Co., 1917, 243 U.S. 302, 37 S.Ct. 274, 61 L.Ed. 735. And the Reviser's Note to Section 1441(c) of the Revised Title 28 tells us that the "separate and independent" language was intended to "somewhat decrease the volume of Federal litigation." See Moore, Commentary on the Judicial Code 239 (1949).

If a lawsuit against joint tortfeasors was not removable under the old statute and remains non-removable under the new, as the Bentley case holds, and if one purpose of the new provision is to cut down federal removal jurisdiction, then it seems to me that a remand to the state court must follow here. The right which the plaintiff seeks to vindicate in this case is an economic one, his interest in the profitable relations between himself and Thor, as set out in the contract between them (the existence of the contract and its terms are assumed for the purpose of this discussion). Two defendants have allegedly interfered with that profitable economic relation, just as in the Bentley case the two tortfeasors combined to invade the plaintiff's right to personal security. Thor violated its promise and Teldisco conspired with Thor to deprive the plaintiff of the value of the economic relationship then existing. It seems to me that the injury is one. Either defendant could be sued for having inflicted it, and if the elements of damage are the same as to both defendants, the satisfaction of a judgment against either would bar the plaintiff from further recovery. An analogous situation is found where a plaintiff pursues separately claims against one who breaks a contract and against another who induced the violation of the contract. Satisfaction of one of these judgments apparently precludes further recovery by plaintiff. Bird v. Randall,

---

1. The consensus of the district courts supports the reasoning of the Bentley case. Remand was ordered in Duffy v. Duffy, D.C.S.D. Iowa, 1950, 89 F.Supp. 745; Harward v. General Motors, D.C.E.D. N.C.1950, 89 F.Supp. 170; Billups v. American Surety Co., D.C.D.Kan.1950, 87 F.Supp. 894; Board of Directors etc. v. Whiteside, D.C.W.D.Ark.1949, 87 F. Supp. 69; Robinson v. Missouri Pacific Transportation Co., D.C.W.D.Ark.1949, 85 F.Supp. 235; Smith v. Waldemar, D.C. E.D.Tenn.1949, 85 F.Supp. 36; Bachman v. Seaboard Air Line R., D.C.E.D.S.C. 1948, 80 F.Supp. 976; English v. Atlantic Coast Line R., D.C.E.D.S.C.1948, 80 F. Supp. 681; Thomas v. Thompson, D.C. E.D.Ark.1948, 80 F.Supp. 225. Separate and independent causes of action were found to exist in McFadden v. Grace Line, Inc., D.C.S.D.N.Y.1948, 82 F.Supp. 494; President and Directors of Manhattan Co. v. Monogram Associates, Inc., D.C. E.D.N.Y.1949, 81 F.Supp. 739.

3 Burr. 1345, 97 Eng.Rep. 866 (K.B. 1762); Restatement, Judgments § 95, Comment b.

It is true that under the plaintiff's allegations his claims against either defendant are "separate" in the sense that a suit would lie against either one alone. That was also true in the Bentley case. An injured person may sue either tortfeasor. But while it may be conceded that the claims are separate, by a parity of reasoning with the Bentley case, it seems to me it is established that they are not independent. The controversy, therefore, was not properly removable and the case should be remanded to the New Jersey state court.

McLAUGHLIN, Circuit Judge, dissenting.

Appellant, a New Jersey corporation, sued appellees, Thor Corporation, an Illinois corporation, and Teldisco, Inc., a New Jersey corporation, in the New Jersey Superior Court. Thor removed the suit to the court below on the ground of diversity of citizenship. Appellant's motion to remand was denied, as was its application for a preliminary injunction.

The main question for consideration is whether the District Court had jurisdiction of this case on removal under Section 1441(c), Title 28 United States Code Annotated 1948 revision, 62 Stat. 937. That section reads: "Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

It is in the interpretation of this language and its application to the case before the court that there is disagreement with the majority.

The first question to be considered here is the nature of the complaint stated against Thor and Teldisco. The suit against Thor is for breach of contract. Thor manufactures washing machines and other home appliances. Mayflower had been its exclusive northern New Jersey distributor and with another company distributor for Metropolitan New York, southern New Jersey, part of eastern Pennsylvania, including Philadelphia, and New Castle County, Delaware, including Wilmington. Teldisco is the replacement northern Jersey Thor products distributor.

The complaint avers that Thor constitutes the sole and exclusive source of manufacture and supply of certain home appliances. It is said that by an agreement in November, 1944, Thor gave Mayflower: (a) exclusive distribution rights of its products in northern New Jersey; (b) distribution rights with one other company in the balance of New Jersey, lower New York State, counties in eastern Pennsylvania and in New Castle County, Delaware. The alleged contract was to be during the period Thor produced the particular products and only terminable on good cause as defined in a named previous agreement. Mayflower stated that, relying on the agreement, it discontinued negotiations with other manufacturers and launched a wide-spread plan of promotion and sale of Thor's appliances in its territory. It asserts that it has already purchased over $9,000,000 worth of merchandise from Thor; has become Thor's largest distributor, and in the year from February 1, 1949 to January 31, 1950, its purchases from Thor totalled over ten per cent of that concern's sales in 1949. The complaint then asserts large expenses by Mayflower in connection with the Thor business; that ninety per cent of its investment value of $500,000 and of its time has been devoted to the promotion and sale of Thor products; that important long term commitments have been entered into, including the purchase of a large building at a cost of $571,000; that a parts department costing $25,000 was purchased at the insistence of Thor and operated at a loss to give service to dealers; that Thor had always expressed satisfaction with Mayflower and in January, 1950, had outlined an expansive program for it to which Mayflower had agreed. A quota was set up for 1950 and Thor is alleged to have

"stated its anticipation that * * * [Mayflower] would purchase from it during the year 1950 at least $5,000,000 worth of merchandise." It is said that Thor held up Mayflower as a model distributor and told Mayflower in January, 1950, that it expected to assist its development into a business of $10,000,000 annual purchasing power "within the reasonably foreseeable future." Next it is said that in March, 1950, eastern Pennsylvania, southern New Jersey and New Castle County, Delaware, were eliminated by agreement.

The complaint then states that on March 10, 1950, without previous notice, and without cause, Thor advised Mayflower that its right of distributorship was terminated, effective immediately. Plaintiff avers that it "is completely ignorant of the cause of this sudden termination." As a result thereof, Mayflower claims, its "operations at this time are practically moribund" and, unless Thor is compelled immediately to carry out the terms of its agreement with Mayflower, vast and immeasurable damage to the latter's reputation and business will result.

It is said that Mayflower's dealer accounts, "created through years of effort and through the expenditure of enormous sums of money", and "which were completely unknown to * * * [Thor] prior to the plaintiff's representation, have been turned over to others and are being vigorously solicited by them. By reason of the excellent job of selling which the plaintiff has done and the large sums of money which the plaintiff has expended in that direction, an enormous good will was created and is now being shifted by * * [Thor] to other persons." The need for immediate relief is stressed because, it is said, unless such "relief is granted it will be most difficult, if not impossible, for the plaintiff to re-establish and re-cement the close relationship which now exists between the plaintiff and its dealers." "Even", says the plaintiff, "if [it] * * * were to obtain a distributorship of a competitive line, all the effort and money heretofore expended for the development of * * * [Thor's] line will have been wasted and it will be difficult, if not impossible, to induce the aforementioned dealers to substitute a new line in the place and stead of * * * [Thor's] products." Mayflower then relates the number of carloads of Thor products it now has on hand and says numerous items of damage, adjustment and setoff exist between the parties.

Paragraph 19 charges that Thor, in pursuance of its purpose to deprive Mayflower of its distributorship and profits thereof, and to transfer such distributorship to one or more persons other than the plaintiff, "has entered into a contractual arrangement with the defendant Teldisco, constituting and appointing the latter a distributor of the said products of the Thor corporation in and for those areas exclusively reserved to the plaintiff * *." It is said that Teldisco had full knowledge of the Mayflower agreement and was aiding the breach thereof by Thor. It then flatly charges that Teldisco's arrangement with Thor "constitutes an unlawful, wanton and malicious conspiracy by both defendants to injure the plaintiff in its lawful business and to deprive the plaintiff of the fruits thereof."

The relief sought against Thor is an injunction from selling its products to any other distributor in Mayflower's exclusive territory and in the territory shared by Mayflower with another distributor; from selling or shipping to any person for the purpose of supplying Mayflower's dealers with merchandise "in any part of the territory assigned to it, exclusive or otherwise," and from selling its products directly to any of Mayflower's customers. An accounting and damages are asked of Thor for sales and deliveries in violation of the Mayflower contract.

Mayflower then asks that Teldisco be enjoined from accepting or selling Thor products in Mayflower's exclusive territory, from soliciting or selling to Mayflower's customers or to anyone supplying the latter; an accounting is asked of Teldisco in connection with all its sales and deliveries of Thor appliances in Mayflower exclusive territory, and, finally, the plain-

tiff asks that Teldisco be ordered to pay to the plaintiff damages arising out of Teldisco's conduct.

Does the complaint, as outlined, contain one or two claims or causes of action? Justice Cardozo has said, "A 'cause of action' may mean one thing for one purpose and something different for another. It may mean one thing when the question is whether it is good upon demurrer, and something different when there is a question of the amendment of a pleading or of the application of the principle of *res judicata* * * *. At times and in certain contexts, it is identified with the infringement of a right or the violation of a duty. At other times and in other contexts, it is a concept of the law of remedies, the identity of the cause being then dependent on that of the form of action or the writ. Another aspect reveals it as something separate from writs and remedies, the group of operative facts out of which a grievance has developed." See United States v. Memphis Cotton Oil Co., 288 U. S. 62, 67, 68, 53 S.Ct. 278, 280, 77 L.Ed. 619.

It is clear that both the context of 1441 (c) and the reason for its existence as revealed by the Reviser's Notes show that "cause of action" as used in the section should be given a broad meaning. See Moore's Commentary, p. 248. Support is lent that interpretation because of the use of "claim" as synonymous with "cause of action" in that section. Claim "* * * is used to denote the aggregate of operative facts which give rise to a right enforceable in the courts. See 1 Moore, Federal Practice, pp. 3, 145-150, 605 * *." Original Ballet Russe v. Ballet Theatre, 2 Cir., 133 F.2d 187, 189.

Plainly, two claims have been stated by appellant. The complaint carefully sets up a contract claim against Thor and a conspiracy claim against Teldisco and Thor. The contract claim arises out of the alleged breach of contract by Thor when it cancelled the Mayflower distributorship. The conspiracy claim arises out of the solicitation of Mayflower dealers in the northern New Jersey area by Teldisco. The complaint sets forth two legal wrongs which are not based on one set of operative facts. The operative facts necessary to show the legal wrong for which a cause of action for breach of contract would lie are completely inadequate to show the conspiracy claim.

The question then becomes whether, in such a situation, Thor could properly remove the action to a Federal court. To determine this question, it is necessary to ascertain the meaning of 1441(c), set forth above.

All that was needed for removal under the Judicial Code of 1911, 36 Stat. 1094, in addition to diversity, was a separable controversy. Pullman Co. v. Jenkins, 305 U.S. 534, 538, 59 S.Ct. 347, 83 L.Ed. 334; Moore's Commentary on the United States Judicial Code, p. 239. It would seem that the new section was drawn to eliminate the separable controversy as a basis for removal unless that controversy constituted a separate and independent claim or cause of action. The Reviser's Notes say that, "Subsection (c) permits the removal of a separate cause of action but not of a separable controversy unless it constitutes a separate and independent claim or cause of action within the original jurisdiction of United States District Courts. *In this respect* it will somewhat decrease the volume of Federal litigation." (Emphasis supplied.) The comment in Federal Practice and Procedure, Vol. 1, pp. 186 and 187, by Barron and Holtzoff, is illuminating: "The emphasis placed upon 'a separate and independent claim or cause of action' is in accord with the cases which under the former statute held a separable controversy to mean a separate cause of action. The controversy must be wholly between the plaintiff and the defendant seeking removal, and capable of being determined finally between them, with complete relief being afforded as to the separate cause of action, without the presence of others originally made parties to the action."

The following quotations from Professor Moore's Commentary cast light on the meaning to be given the new section:

At page 238: "In other words the fragment of a cause of action can no longer

furnish a basis for removal; one of two or more causes of action may do so. So that the old separable controversy wine will not be served under the new label, courts must give a broad meaning to cause of action. Thus where a group of operative facts give rise to a claim on the part of the plaintiff, as where several persons contribute to his injury and he sues one or more of them in one action, the plaintiff is proceeding on one cause of action, and it is not removable under Section 1441(c)."

At page 239: "The Revisers had two reasons for eliminating the separable controversy as a basis for removal. First, this ground for removal had been added following the Civil War in an effort to protect a non-resident defendant, who had been joined with one or more local defendants under the relaxed and expanding state joinder provisions. Second, the confusion surrounding the concept of separability overshadowed whatever present utility it had. On the other hand not all of the Revisers were willing to confine removal to two general grounds: the federal question, and complete diversity. They did, however, desire a substitute that would restrict more narrowly the right to remove. Accordingly they eliminated the separable controversy, which involves the joinder of multiple parties interested in *one* cause of action; and confined removal to the situation where there is a joinder of two or more causes of action."

At page 241: "It is important to distinguish three classes of litigation that the decisions made in dealing with separable controversy and separate claims. The groupings are as follows:

"(1) cases involving a pleaded claim to which all the defendants were necessary or indispensable parties—these cases consist of non-separable controversies.

"(2) cases dealing with a pleaded claim to which some of the defendants are only proper parties—such cases involve separable controversies; ·

"(3) cases in which separate and independent claims or causes of action against the same or different parties are joined— these do not involve a separable controversy and are now removable under Section 1441(c)."

At page 248: "Cases which fall within classification (3) involve joinder of distinct causes of action * * *, and not merely joinder of parties connected with one cause of action."

Under the 1911 Code, this litigation would fall within the third category above. The test of removability under the new section suggested by both Moore and Barron and Holtzoff is based on cases which would be included in that group.

From the foregoing it would seem that under 1441(c) an action is removable where there "exist[s] in the suit a separate and distinct cause of action, on which a separate and distinct suit might properly have been brought, and complete relief afforded as to such cause of action, with all the parties on one side of that controversy citizens of different states from those on the other." Fraser· v. Jennison, 106 U.S. 191, 194, 1 S.Ct. 171, 174, 27 L.Ed. 131. The idea that the complaint in this case contains two causes of action is apparently shared by one of the majority members of this court.[1] The real question is the meaning to ascribe to "separate and independent." It is the view of this writer that these words were inserted in the new section as an aid to the elimination of the separable controversy. The rule laid down in 1441(c), as I see it, is that if a suit is not one involving " * * * the joinder of multiple parties interested in *one* cause of action; * * *" but involves the " * * * joinder of two or more causes of action" (Moore's Commentary, supra, p. 239), one of which is " * * * capable of being determined finally between * * * [the plaintiff and the defendant seeking removal], with complete relief being afforded as to the separate cause of action, without the presence of others originally mades parties to the action" (Federal Practice and Procedure, supra, p. 187), then that suit contains a "separate and inde-

---

1. See opinion by Judge Hastie, wherein he speaks in terms of two claims.

pendent claim or cause of action" within the meaning of the critical section.[2]

The basis for removal of this suit is the cause of action set forth by Mayflower against Thor for breach of contract. This claim is capable of final and complete disposition between Mayflower and Thor without the presence of Teldisco. It follows, therefore, that the District Court properly denied the appellant's motion to remand.[3]

---

2. It should be noted that, "A claim or cause of action which is merely incidental or collateral to the main action can afford no basis for removal on the theory that it is a separate claim or cause of action." (Federal Practice and Procedure, supra, p. 189). That is not the situation here.

3. Under the majority decision appellant's further point that the District Court erred in its denial of a preliminary injunction is academic.