Elias M. **PINTO**, Nina **Pinto**, Maurice E. **Pinto**, Camila **Pinto** and Joseph J. **Pinto**, Plaintiffs,

v.

**MAREMONT CORPORATION**, Defendant.

No. 70 Civ. 5515.

United States District Court, S. D. New York.

April 7, 1971.

**166**

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for plaintiffs; Arthur L. Liman, Max Gitter, New York City, of counsel.

Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant; Bernard J. Nussbaum, Paul Horton, Chicago, Ill., George G. Gallantz, Michael A. Cardozo, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

Plaintiffs have moved for a remand of this case to the state court whence it was brought here by defendant. Both sides have the court's appreciation for skillful and learned presentations. On the less aesthetic level of result, the decision must be for plaintiffs.

The case began in the State Supreme Court, New York County, with the service of a summons alone. The complaint, served on November 17, 1970, and followed in the next month by the petition for removal, alleged four causes of action relating to an agreement of 1966 under which plaintiffs had agreed to accept stock in defendant corporation in exchange for their stock in a company called Chanslor & Lyon ("C & L"). Under the agreement there was a "first closing" in December 1966 at which plaintiffs exchanged all but 20% of the stock of C & L for designated amounts of defendant's common and preferred shares. The agreement provided that if the Maremont common stock plaintiffs received at this closing did not rise to an average price of $30 per share for six consecutive months during the ensuing three years, plaintiffs would be entitled to receive additional shares from defendant sufficient to make up the difference between $30 and the highest average closing price during such a period. The agreement went on to give plaintiffs an option to put to defendant, at any time during the three years after December 1966, their remaining 20% of the C & L stock. A formula was agreed upon for determining the price of this remaining stock upon the basis of C & L earnings during the three-year period preceding exercise of the option. The option was exercised in October, 1970.

Briefly but sufficiently summarized, the first count of the complaint alleges that defendant, through improper press releases, false financial statements and other fraudulent means, caused its stock to reach artificially high prices, of close to $30 per share, in 1967, thus defrauding plaintiffs of additional compensation to which the agreement, lawfully followed, entitled them. The second cause of action charges defendant with breaches of promises to protect C & L earnings, thus diminishing the price to be realized by plaintiffs from the 20% remainder of C & L's stock put to defendant under the agreement. These first two counts rest, it is agreed, upon state law theories.

The third cause of action repeats the factual allegations of the first two, charges a false representation by defendant in 1966, and asserts a resulting wrong under the Securities Act of 1933. This alleged cause, as will appear, is the center of the problem before the court at this time.

The fourth and last cause of action realleges the earlier charges and invokes a provision of the underlying agreement according to which plaintiffs claim defendant must bear half the tax burden of plaintiffs' exercise of their option and of any recovery they may obtain in this suit.

The petition for removal shows that defendant is incorporated and has its principal place of business in Illinois. Plaintiffs are citizens of other states or

foreign countries. It is then stated that the action is one over which the federal court has "original jurisdiction under 28 U.S.C. § 1332 [diversity] and other statutes [not specified]."

The arguments for and against remand proceed through a series of thrusts and parries. It will be simplest to follow them to what the court has judged to be their proper conclusion.

Plaintiffs rely at the outset (and in the end) upon § 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a), which says in pertinent part:

"* * * No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." [1]

They argue that "Korber v. Lehman, 221 F.Supp. 358 (S.D.N.Y.1963) is directly in point." The court agrees with the argument and will follow the cited decision.[2]

As its first line of defense against remand, defendant argues that the quoted anti-removal statute cannot apply because plaintiffs purport to rely in their third cause of action upon § 17 of the 1933 Act, 15 U.S.C. § 77q, and that section "does not expressly provide a pri-

vate damage claim for its violation." Korber v. Lehman is said to be distinguishable on this ground (among others) since it involved a claim upon the expressly provided right under § 12(2) of the 1933 Act, 15 U.S.C. § 77l(2). In response to the two branches of this contention, there are two fairly short answers. First, while the existence of a private right of action under § 17 must still be deemed an open question, the claim of such a right is substantial, far from frivolous, see, e. g., Globus v. Law Research Service, Inc., 418 F.2d 1276, 1283–1284 (2d Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); Securities and Exchange Com'n v. Texas Gulf Sulphur Co., 401 F.2d 833, 867–868 (2d Cir. 1968) (Friendly, J., concurring), cert. denied, Coates v. Securities and Exchange Commission, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 n. 2 (2d Cir. 1951); Weber v. C. M. P. Corporation, 242 F.Supp. 321 (S.D.N.Y.1965); Dack v. Shanman, 227 F.Supp. 26 (S.D.N.Y. 1964); 3 Loss, Securities Regulation 1785–86 (1961); 6 Loss, Securities Regulation 3913–14 (Supp.1969), and thus plainly sufficient to launch a "case arising under" the 1933 Act.[3] Here, as in

---

1. The first sentence of the same section provides for concurrent state and federal jurisdiction "of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter."

2. The parties agree that the meaning of § 22(a) is not illuminated by its legislative history. Thus driven to rely on the words Congress enacted, cf. Frankfurter, Some Reflections on the Reading of Statutes, 47 Col.L.Rev. 527, 543 (1947), the court agrees with plaintiffs' contention that the statute, like others of the same genre, has the evident purpose of favoring plaintiffs' choice of forum. Cf. Wright, Federal Courts § 38 n. 28 (2d ed.). This concern for the rights of complaining investors is consistent with the general pattern of solicitude for such persons pervading the securities legislation. Wilko v. Swan, 346 U.S. 427, 431, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

3. The parties battle to a draw when each finds in the opposing camp one critical

expression said to be an earlier, unguarded concession of the truth now resisted. Some months after service of the summons herein, but before the complaint, defendant sued plaintiff Elias Pinto in the District Court for Northern Illinois, invoking § 17 of the 1933 Act on premises evidently inconsistent with those defendant presents here. But that creates no estoppel, and plaintiffs are in no position to invoke defendant as the last word on legal questions. Going back in time, the form summons briefly labeled the object of the New York State proceeding as "damages for breach of a written agreement." Apart from the sworn statement of plaintiffs' former counsel that all suggestion of "fraud" as an explicit characterization was being avoided at that time in order to refrain from creating obstacles to settlement, this cursory label can hardly be deemed of vital interest for the jurisdictional questions now being deliberately presented and considered.

Korber v. Lehman, *supra*, 221 F.Supp. at 360, the proper issue is not as to the ultimate "merits of the claim," but whether there is enough of substance in it to have those merits adjudicated in the state forum where Congress said cases arising under the 1933 Act should remain. That formulation, supported by cogent analogies, cf. Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951); Romero v. International Term. Operating Co., 358 U.S. 354, 359, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913), puts the correct question and yields a prompt answer.

There is shorter work in defendant's argument that a case cannot be one "arising under" § 17 where the private claim is not given expressly by the statute, but must be found to have been implied. A host of cases "arising under" the Constitution and federal statutes rest upon asserted rights similarly implied rather than expressed. E. g., Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 213, 65 S.Ct. 235, 89 L.Ed. 187 (1944); see Reitmeister v. Reitmeister, 162 F.2d 691, 694 (2d Cir. 1947); McFaddin Express, Incorporated v. Adley Corporation, 346 F.2d 424, 425–426 (2d Cir. 1965), cert. denied, 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966). The analogy may be imperfect, but not in any respect that warrants further worry here.

We are brought to a somewhat more abstruse subject by defendant's reliance upon the third subsection of the removal statute, 28 U.S.C. § 1441(c), which provides:

> "Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

It seems questionable at the threshold whether a case of the present kind ever reaches the purview of that third subsection. At its outset, in subsection (a), § 1441 begins with the words

> "Except as otherwise expressly provided by Act of Congress,"

and proceeds from there to describe the kinds of "civil action" removable from state to federal courts. There is substantial ground for arguing that we have here a "civil action" in which an Act of Congress provides expressly for non-removability; and that, on this analysis, the "action" was never removable in the first place, and thus never became properly eligible for the kind of discretionary judgment about remand provided for in subsection (c).[4] While

4. The details of the analysis, learnedly outlined in plaintiffs' submissions, are, briefly, these:
On its face, § 1441(a) qualifies the initial grant of removal authority, and the qualification may be reasonably construed to mean that the various specific anti-removal statutes supplant the more general removal provisions of § 1441. Cf. Reese v. Southern Ry. Co., 26 F.2d 367 (N.D.Ga. 1928). This interpretation comports with the general policy favoring strict construction of the removal provision, 1A Moore, Federal Practice ¶ 0.157 [1.–3], and with the fundamental purpose of § 1441(c), to protect defendants against defeat of federal jurisdiction by plaintiffs' joinders of unrelated claims. See Cohen, Problems in the Removal of a "Separate and Independent Claim or Cause of Action," 46 Minn.L.Rev. 1, 19 (1961).
Plaintiffs conclude, therefore, that § 1441 (c) does not apply to a multiple-claim suit when Congress has expressly made one or more of the claims non-removable. In such a suit the relevant task under § 1441(a) is to determine what was "expressly provided by an Act of Congress." This becomes in the present case an inquiry into the scope of § 22(a) of the 1933 Securities Act, which states that "no case arising under [the Act] shall be removed * * *." Plaintiffs argue

such reasoning would seem persuasive to this court as an original proposition, it has been rejected *sub silentio* or simply overlooked in cases analogous to this one.[5] There is no need, however, to travel that possibly open avenue. For plaintiffs prevail, in any event, on the ground that there is no "separate and independent claim" of the kind that could justify retaining jurisdiction in this court under § 1441(c).

Plaintiffs' contract claims and the Securities Act claim arise out of "substantially the same facts and transactions," American Fire & Cas. Co. v. Finn, 341 U.S. 6, 16, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951); Korber v. Lehman, *supra*; Pate v. Standard Dredging Co., 193 F.2d 498, 501 (5th Cir. 1952); Mayflower Industries v. Thor Corp., 184 F.2d 537, 539 (3d Cir. 1950), cert. denied, 341 U.S. 903, 71 S.Ct. 610, 95 L.Ed. 1342 (1951); see Twentieth Century-Fox Film Corp. v. Taylor, 239 F.Supp. 913, 915–916 (S.D.N.Y.1965), namely, Maremont's alleged manipulation of both the market price of its stock and the value of plaintiffs' option to sell C & L's remaining stock. It is of no significance that after realleging everything in the contract claims, count three alleges other facts in order to describe the additional Securities Act charge. Cf. Korber v. Lehman, *supra*, 221 F.Supp. at 359. As plaintiffs concede, since the suit is based upon one series of transactions, recovery could not be had under both the Securities Act claim and the contract claims. *Id.* at 359–360. In these circumstances, the third cause of action is not a "separate and independent claim" under § 1441(c). See Wright, Federal Courts § 39 (2d ed. 1970); Cohen, *supra*, 46 Minn.L.Rev. at 20.

Nor is the fourth cause of action "separate and independent" from the others. Expressly incorporating the earlier allegations of the complaint, this count merely seeks as additional damages a portion of the taxes on plaintiffs' monetary recovery (if any) under the prior causes of action. It is entirely dependent upon the other causes of action, could not have been made the basis of a separate lawsuit, and does not constitute a "separate and independent claim" under § 1441(c).

that an action is a "case" arising under the Act, and therefore not removable, if at least *one* of the multiple claims is asserted under the Act; where plaintiffs have joined unrelated claims, defendants' removal rights would be protected by fraudulent joinder rules (which would have no application here). See Cohen, *supra* at 20.

Alternatively, plaintiffs suggest that the word "case" in the anti-removal provision includes an action made up of a Securities Act claim and state law claims which would be cognizable in federal court under the doctrine of pendent jurisdiction. Cf. Ullrich v. New York, N. H. & H. R. Co., 193 F. 768 (S.D.N.Y. 1912) (Learned Hand, D. J.); Reese v. Southern Ry. Co., 26 F.2d 367 (N.D.Ga. 1928). Such "cases" would not be removable in part or in their entirety. This latter approach again would protect defendants from the joinder of unrelated claims designed to defeat removal, and at the same time would permit plaintiffs to obtain in one action an economical determination of related claims (including the state law claims which the Securities Act explicitly declares it does not preempt, 15 U.S.C. § 77p), without forfeiting the choice of forum granted by the anti-removal provision. Plaintiffs note that this emphasis on the relatedness of claims would lead to substantially the same results as the "separate and independent" approach of § 1441(c).

5. E. g., Korber v. Lehman, *supra*; Pate v. Standard Dredging Co., 193 F.2d 498 (5th Cir. 1952) (remanding under § 1441 (c) a Jones Act suit, incorporating the anti-removal provision of the Federal Employers' Liability Act, where other claims were not separate and independent); Hall v. Illinois Central Railroad Company, 152 F.Supp. 549 (W.D.Ky. 1957) (similar under F.E.L.A.); cf. Emery v. Chicago B. & Q. R. R., 119 F.Supp. 654 (S.D. Iowa) (also reaching § 1441(c), removing separate and independent diversity claim, taking with it an otherwise nonremovable F.E.L.A. claim); Moore & Van Dercreek, Multi-Party, Multi-Claim Removal Problems: The Separate and Independent Claim Under Section 1441(c), 46 Iowa L.Rev. 489, 497 n. 34 (1961).

Plaintiffs' motion is granted. The case is remanded to the Supreme Court of the State of New York, County of New York.

It is so ordered.