TWENTIETH CENTURY–FOX FILM
CORPORATION, Plaintiff,

v.

Elizabeth TAYLOR and Richard Burton,
Defendants.

United States District Court
S. D. New York.

March 26, 1965.

**914**

Royall, Koegel & Rogers, New York City, for plaintiff, Frederick W. R. Pride, New York City, of counsel.

Weisberger & Frosch, New York City, Gang, Tyre, Rudin & Brown, Los Angeles, Cal., for defendants, Milton A. Rudin, Los Angeles, Cal., of counsel.

WEINFELD, District Judge.

The plaintiff, Twentieth Century-Fox Film Corporation, moves to remand[1] this action to the New York State Supreme Court whence it was removed to this Court on the petition of the defendant Richard Burton. The action is one of a series of litigations arising out of the production of the motion picture "Cleopatra," in which Burton and Elizabeth Taylor, now husband and wife, play principal roles.. Twentieth Century-Fox seeks to recover substantial damages based upon five separate causes of action, the first and fifth of which are against Taylor individually, the second against Burton individually, and the third and fourth against them severally and jointly.

Plaintiff, a Delaware corporation, alleges its principal place of business is New York. Taylor is a citizen of the United States, but is not a citizen of any state.[2] Burton is a British subject, not resident in any state of the United States.

## I. REMOVAL OF THE SECOND CAUSE OF ACTION.

Had Burton, an alien, been named as the sole defendant, removability could not be questioned, since the case would be within the original diversity jurisdiction of this Court.[3] And so, too, it is beyond challenge that had Taylor been named as the sole defendant, the action would have been non-removable.[4] However, the joinder of the claims against them enabled Burton to remove the entire case to this Court upon his allegation that the second cause of action, pleaded solely against him, came within the purview of 28 U.S.C. § 1441(c), which provides:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues there-

---

1. 28 U.S.C. § 1447(c) provides, in part:
   "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs. * * *"

2. In April 1964 plaintiff, together with a British affiliate, commenced a diversity action in this Court against the defendants herein, based upon substantially four of the five counts herein alleged. The defendant Taylor raised a jurisdictional defense—potentially fatal to diversity jurisdiction—upon her contention that although a citizen of the United States, she was not a citizen of any state. See, e.g., Pemberton v. Colonna, 290 F.2d 220 (3d Cir. 1961); Van der Schelling v. United States News & World Report,

Inc., 213 F.Supp. 756 (E.D.Pa.), aff'd, 324 F.2d 956 (3d Cir. 1963); Hammerstein v. Lyne, 200 F. 165 (W.D.Mo.1912). The defendant Burton also challenged jurisdiction on the ground there was no diversity between himself and the British affiliate. The plaintiff thereupon voluntarily dismissed the action. The present suit was commenced in the state court shortly before the dismissal.

3. 28 U.S.C. § 1332(a):
   "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, * * * and is between— * * * (2) citizens of a State, and foreign states or citizens or subjects thereof, * * *."

4. See cases cited note 2 supra.

in, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

The section, with its "separate and independent claim or cause of action" removability standard, was enacted in 1948,[5] according to the revisers of the Judicial Code, to avoid the confusion which had beset the earlier "separable controversy" test and also in the hope that it would "somewhat decrease the volume of Federal litigation." [6] The new provision had its first, and thus far only, consideration by the Supreme Court in American Fire & Cas. Co. v. Finn.[7] There the plaintiff, a Texas citizen, joined two foreign insurance companies and their local agent, also a Texas citizen, claiming that either of the companies was alternatively liable for a fire loss under a policy issued by each separately, or that the agent was liable for failure to keep the property insured. The Court, in upholding an attack upon removal jurisdiction by the very defendant which had successfully invoked it in the courts below but had failed in the action itself, held:[8]

"* * * where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)."

In applying the test to the case before it, the Court attached significant weight to the circumstances that "[t]he single wrong for which relief is sought is the failure to pay compensation for the loss on the property"; that the "facts in each portion of the complaint" involved the local agent, plaintiff's co-citizen; that the damages arose from a single incident; and that each of the three claims asserted involved "substantially the same facts and transactions."[9] and consequently concluded that removal was improper.

Twentieth Century-Fox, relying heavily upon Finn, contends that the acts and conduct of the two defendants set forth in the first four causes of action are so interlaced that in substantial measure they give rise to and establish the two individual causes of action for breach of each respective employment agreement, as well as the two causes of action, one for the inducement of the breach, and the other for tortious interference—that, as in Finn, in plaintiff's words, "one 'fire' both induced and resulted in the simultaneous breach of two employment contracts so as to render this action [the second cause of action] not removable as a 'separate and independent cause of action' for breach of one of the agreements."

The statutory test is more easily stated than applied. When multiple defendants are alleged to have contributed concurrently or jointly to a single tortious impact [10] and claims are stated against al-

5. Reviser's Note, 28 U.S.C. § 1441. In 1866 an alien or nonresident defendant was authorized to remove a "separable controversy" involving a resident plaintiff, leaving other issues for state court adjudication. Separable Controversy Act of July 27, 1866, 14 Stat. 306. In 1875 any plaintiff or defendant "actually interested in such controversy" was permitted to remove the entire case to the Federal court. Act of March 3, 1875, c. 137, 18 Stat. 470. The Act of March 3, 1887, c. 373, 24 Stat. 552, corrected by the Act of Aug. 13, 1888, c. 866, 25 Stat. 433, preserved the right to remove an entire case upon the basis of a "separable controversy," but limited removal to defendants—the scheme which survived until the 1948 revision. See generally, Texas Employers Ins. Ass'n v. Felt, 150 F.2d 227, 160 A.L.R. 931 (5th Cir. 1945); Hart & Wechsler, The Federal Courts and the Federal System 1044–48 (1953).

6. Reviser's Note, 28 U.S.C. § 1441. On the use to which such legislative materials may be put, see United States v. National City Lines, Inc., 337 U.S. 78, 81, 69 S.Ct. 955, 93 L.Ed. 1226 (1949).

7. 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

8. Id. at 14, 71 S.Ct. at 540.

9. Id. at 16, 71 S.Ct. at 541.

10. E.g., Snow v. Powell, 189 F.2d 172 (10th Cir. 1951); Bentley v. Halliburton Oil Well Cementing Co., 174 F.2d 788 (5th Cir. 1949).

ternative defendants,[11] removal is uniformly denied. But the courts are split as to removability where one defendant is accused of breach of contract and another is charged with inducing or exploiting the breach,[12] and where co-insurers are sued on separate contracts covering a single loss.[13] The present case, however, fits none of these categories. Having examined the judicial gloss which Finn and other decisions have put on section 1441(c), the Court concludes that the "second cause of action," the basis of Burton's removal petition, constitutes "a separate and independent claim or cause of action" within the statute. Since this conclusion necessarily is governed by the allegations of the complaint,[14] we turn to it.

The first cause of action is against Taylor individually for breach of her contract, and specifies a series of acts and conduct which gives rise to the claim. These include allegations that she failed to perform her services with diligence, care and attention; that she reported for work in an unfit condition; that she allowed herself to become unphotographable and unfit to perform her services; that she failed to report for work; that she failed to report on time; that she suffered herself to be held up to scorn, ridicule and unfavorable publicity by her public conduct; and that she conspired with and induced others to breach their agreements with plaintiff.

The second cause of action against Burton for breach of his employment contract contains allegations of conduct identical to those charged against Taylor. There are, however, allegations that

he breached the contract in other respects.

The third cause of action against Taylor and Burton, individually and jointly, charges that each induced the other, and others, to breach the respective employment agreements as set forth in the first and second causes of action; this cause of action specifies that each induced the other:

"30.(a) * * * to engage in conduct with each other although each was to public knowledge at these times, married to another, so as to hold the other up to public scorn and ridicule;

"30.(b) * * * not to abide by and observe reasonable and customary rules, directives, regulations and orders for conduct and deportment during the course of production * * *."

The fourth cause of action against Taylor and Burton, individually and jointly, charges interference with and injury to plaintiff's business and property rights by the acts and conduct complained of in the prior causes of action.

The fifth cause of action is solely against Taylor and alleges that she is the alter ego of MCL Films, S.A., and seeks a declaratory judgment that any money due from Twentieth Century-Fox to MCL may be set off against any judgment against Taylor.

The hard core of the rationale of the Finn holding is that the plaintiff suffered a single wrong arising out of the fire, which entitled him to but one recovery, sought alternatively against one of the

11. E.g., Schoneweather v. L. F. Richardson, Inc., 122 F.Supp. 692 (W.D.Mo. 1954); Chason Bros. v. Insurance Co. of North America, 102 F.Supp. 803 (S.D. N.Y.1952).

12. Compare Mayflower Industries v. Thor Corp., 184 F.2d 537 (3d Cir. 1950), and Gustaveson, Inc. v. Graybar Elec. Co., 222 F.Supp. 473 (W.D.Mo.1963), with Shelley v. The Maccabees, 180 F.Supp. 517 (E.D.N.Y.1959), and Allison v. American Airlines, Inc., 112 F.Supp. 37 (N.D. Okl.1953).

13. Compare Charles Dowd Box Co. v. Fireman's Fund Ins. Co., 303 F.2d 57 (1st Cir. 1962), and Young Spring & Wire Corp. v. American Guar. & Loan Ins. Co., 220 F.Supp. 222 (W.D.Mo. 1963), with Baltimore Gas & Elec. Co. v. United States Fid. & Guar. Co., 159 F. Supp. 738 (D.Md.1958).

14. American Fire & Cas. Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

three defendants. The situation here is quite unlike that. Basically there are two separate and distinct employment contracts, one with each defendant, for services of a highly specialized and individual nature. This circumstance at once negates rather than supports plaintiff's position that individual breaches of the two separate contracts give rise to a single wrong and a single claim for damages.

The contracts were entered into on different dates. Taylor performed services almost a year before Burton entered into his agreement. Each alleged breach, predicated upon individual acts, gives rise to a separate wrong and a separate claim for damages unrelated to the breach of the employment contract with the other defendant. The fact that the services were to be rendered by each performer in the production of one film does not coalesce violations of the two separate contracts into a single wrong.[15] While it is true that the same kind or type of conduct is asserted to constitute the breach of each separate contract, it does not follow that the acts resulted, as plaintiff charges, in the "simultaneous breach of two employment agreements." For example, it is alleged that each defendant rendered himself or herself unfit to perform required services; failed to report for work; to report on time; and refused to follow directions. But it is not alleged, and it does not appear from the complaint, that one defendant's violation of contractual duty is necessarily related to the other; that their alleged absences from work or tardiness in appearing, or refusal to follow directions occurred simultaneously, at the same place or under similar circumstances. Moreover, as already noted, there are some allegations of breaches different in the one cause of action from the other. Thus, Taylor is charged with having permitted herself to become unphotographable. No such claim is made against Burton. On the other hand, charges are made against him that are not made against her—to wit, that he disabled himself from performing in the manner directed and at times and places required; that he failed or refused to perform to the best of his ability with due regard to the efficient production of the picture; that he circulated and disseminated news stories and issued other publicity without prior approval contrary to his agreement.[16]

It is true that the individual acts alleged in support of the respective claims against each defendant for breach of his or her contract serve, upon additional allegations of joint conduct, as the basis for the third and fourth causes of action —the tort claims. However, these allegations of joint conduct which underlie the tort claims do not destroy the independent character of the cause of action against Burton for breach of his individual agreement—the single wrong attributed to Burton still remains one of the plaintiff's separate claims.

The claim against him individually is not governed by the operative facts required to establish, nor does it turn upon, any other cause of action. The amount of damages claimed from Burton for his alleged breach is $5,000,000; that sought from Taylor for her alleged breach is $20,000,000. A recovery by Twentieth Century-Fox in its suit against her for breach of her contract will not foreclose recovery against Burton for breach of his, and vice versa. Thus, plaintiff's success or failure in one suit will not bar the other. Similarly with respect to the tort actions, a disposition of them will not necessarily be dispositive of the second cause of action against Burton. First, one cannot be charged with inducing a breach of his own contract.[17] Then, should it be found there was no breach of the agreement, it would end any claim of inducement, and even should

---

15. Reynolds v. Bryant, 107 F.Supp. 704 (S.D.N.Y.1952).

16. Taylor's contract contains no such provision.

17. Goldstein v. Doft, 236 F.Supp. 730, 733 (S.D.N.Y.1964).

918

it be found that there has been a breach, it would not necessarily follow that it was the result of tortious conduct or inducement on the part of any third person. In sum, plaintiff here charges more than a single wrong; it seeks more than a single recovery.

What this Court said in a somewhat parallel situation, where there were three plaintiffs, employees of one defendant, each suing upon his separate and individual employment agreement, is applicable here:

"The complaint alleges three separate and entirely independent contracts, one by each plaintiff with the defendant. Two were made on the same day, although not necessarily at the same time, and the third some months later. The terminal date of the third is different from that of the other two. Neither the complaint nor the petition alleges any fact or circumstance which would warrant the conclusion that the three agreements were based upon a common understanding or that proof of the same operative facts would establish the right of each plaintiff to recover. The fact that the plaintiffs were engaged by a common employer who agreed to pay them the same rate of compensation does not destroy the separate and independent nature of their respective claims. Even if we were to assume, that which is not revealed by the complaint or petition, that there are common questions of fact or that the claims arose out of the same occurrences, this would not change the separate and independent character of each plaintiff's claim." [18]

And finally, in no respect has the second cause of action any relationship whatso-

ever to the fifth cause of action involving the status of Taylor and a Swiss corporation. The motion to remand on the ground that the suit was not removable under Section 1441(c) is denied.

## II. THE REMAINING CAUSES OF ACTION.

■ The plaintiff further moves, in the event the second cause of action is deemed separate and independent, that the Court remand the other four claims, nonremovable in and of themselves, to the State Court. It urges that such a course is constitutionally compelled and, if not, is justified as a matter of discretion. Neither ground is persuasive.

Plaintiff's constitutional contention may be summarized as follows: Article III, Section 2, of the Constitution authorizes the Federal courts to adjudicate only those controversies arising between parties of diverse citizenship or cases involving Federal questions;[19] Twentieth Century-Fox and defendant Taylor are not of diverse citizenship within the meaning of the Article; the claims or causes of action asserted against Taylor clearly raise no Federal question; therefore they cannot be carried into the Federal courts on the coattails of the separate and independent cause of action which plaintiff brought against defendant Burton; to the extent Section 1441(c) authorizes the transfer of the separate nondiversity, nonfederal question claims against Taylor, it confers jurisdiction upon the Federal courts in excess of the judicial power authorized in Article III, Section 2. The unconstitutionality of this grant of jurisdiction, argues plaintiff, is underscored by the fact that the 1948 requirement of a separate and independent cause of action as a predicate for removal necessarily means that such a claim or cause of action is so "unre-

18. Reynolds v. Bryant, 107 F.Supp. 704, 706 (S.D.N.Y.1952).

19. U.S. Const. art. III, § 2: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made,

under their Authority; * * * to Controversies * * * between citizens of different states, between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

lated," "disassociated," or "isolated" from the joined and otherwise nonremovable claims as to foreclose the application of pendant and ancillary jurisdiction doctrines to justify Federal retention of such claims [20]—in sum, that only the diversity and "separate and independent claim" can constitutionally be removed, leaving to the State the nondiversity, nonfederal claims.

Although this constitutional attack on Section 1441(c) has been accepted by some commentators [21] and noticed by some courts,[22] this Court finds the arguments to the contrary more convincing.

First, the presumption of constitutionality which cloaks all legislation is, in this instance, strengthened by nearly a century of usage and judicial decision upholding the jurisdiction of Federal courts to remove not only a controversy between diverse citizens, but the entire case, including nonfederal, nondiversity claims of other citizens. And while it may readily be acknowledged that few courts have dealt explicitly with the constitutional issue, that the issue is readily avoided and has been avoided,[23] and that many of the decisions antedate the 1948 revision of the "separate and independent requirement,[24] the fact is that until 1948 retained jurisdiction of nonremov-

able claims was generally accepted. With the 1948 amendment thus favored by the presumption of constitutionality and a history of decisions implicitly recognizing the constitutionality of removal of nonfederal, nondiverse controversies, a heavy burden is cast upon those seeking to overturn it.

■■■ The plaintiff's basic position is that the rule of Strawbridge v. Curtiss,[25] requiring diversity of citizenship between all plaintiffs and all defendants, expresses a limitation inherent in Article III, Section 2, rather than a construction of the Judiciary Act of 1789. Chief Justice Marshall's decision in Strawbridge clearly purported only to construe "The words of the act of congress." There is nothing in the opinion to justify attributing to Marshall, who was after all profoundly aware of the difference between construing a statute and expounding the Constitution,[26] any purpose to impose an inflexible, narrow view upon the grant of jurisdiction contained in Article III. The Supreme Court has never so read his opinion.[27] Two courts have explicitly rejected the constitutional attack here made,[28] and others have done so by implication.[29] In Finn, the Supreme Court itself noted that the revisers carefully provided "an opportu-

20. E.g., Texas Employers Ins. Ass'n v. Felt, 150 F.2d 227, 234–235, 160 A.L.R. 931 (5th Cir. 1945).

21. Notably Lewin, "The Federal Courts' Hospitable Back Door—Removal of 'Separate and Independent' Non-Federal Causes of Action," 66 Harv.L.Rev. 423 (1953). See also, Note, 94 U.Pa.L.Rev. 239 (1946).

22. E.g., Charles Dowd Box Co. v. Fireman's Fund Ins. Co., 303 F.2d 57 (1st Cir. 1962); Finn v. American Fire & Cas. Co., 207 F.2d 113 (5th Cir. 1953), cert. denied, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069 (1954).

23. E.g., Charles Dowd Box Co. v. Fireman's Fund Ins. Co., 303 F.2d 57, 61 (1st Cir. 1962).

24. E.g., Texas Employers Ass'n v. Felt, 150 F.2d 227 (5th Cir. 1945) (justifying retention on the ground of ancillary jurisdiction).

25. 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

26. M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 407, 4 L.Ed. 579 (1819).

27. See Treinies v. Sunshine Mining Co., 308 U.S. 66, 71, 60 S.Ct. 44, 84 L.Ed. 85 (1939) (leaving the question open). Compare Stewart v. Dunham, 115 U.S. 61, 64, 5 S.Ct. 1163, 29 L.Ed. 329 (1885), with Shields v. Barrow, 58 U.S. (17 How.) 130, 145, 15 L.Ed. 158 (1855).

28. Breslerman v. American Liberty Ins. Co., 169 F.Supp. 531 (E.D.N.Y.1959); Baltimore Gas & Elec. Co. v. United States Fid. & Guar. Co., 159 F.Supp. 738 (D.Md.1958).

29. E.g., Greenshields v. Warren Petrol. Corp., 248 F.2d 61 (10th Cir.), cert. denied, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed. 2d 262 (1957); Reynolds v. Bryant, 107 F.Supp. 704 (S.D.N.Y.1952); Scheideler v. Jones, 105 F.Supp. 726 (S.D.N.Y. 1952).

nity" for state courts to adjudicate nonfederal causes of action,[30] implying that such claims may be federally retained. On Finn's remand, the Court of Appeals for the Fifth Circuit suggested that nonfederal claims relating to the same transaction or series of transactions could be retained for Federal adjudication.[31] In numerous other contexts the Federal courts have declined to apply the rule of complete diversity. Thus, the jurisdictional requirements of the Federal Interpleader Act [32] have been held satisfied by "minimal diversity," by diverse citizenship of any two adverse claimants.[33] Similarly, less than complete diversity has been found sufficient in class actions [34] and in intervention suits by cocitizens.[35] And the American Law Institute's proposals for Federal adjudication of a broad range of multi-party litigation are predicated upon the constitutional validity of "minimal" diversity.[36] Finally, most commentators have concluded that retention of nonfederal claims under Section 1441(c) violates no constitutional limitation.[37] Indeed, the draftsmen of the American Law Institute's proposed revision of the Federal jurisdictional statutes, fully mindful of the attack made upon Section 1441(c), provide that the district courts may in their discretion retain an entire case removed by a single defendant.[38] In sum, nothing in Article III prohibits Congress from opening the Federal courts to controversies not raising Federal questions, so long as any two adverse parties are of diverse citizenship. Section 1441(c) represents one instance in which Congress has clearly made use of the commodious Article III grant.

Finally, and wholly apart from the foregoing analysis, Section 1441(c) finds support in Congressional power under the "necessary and proper" clause of Article I, Section 8. Since 1875 Congress has manifested concern lest the removal jurisdiction result in the fragmentation of litigation. As the Supreme Court said in Barney v. Latham: [39]

> "It was often convenient to embrace in one suit all the controversies which were so far connected by their circumstances as to make all who sue, or are sued, proper, though not indispensable parties. Rather than split up such a suit between courts of different jurisdictions, Congress determined that the removal of the separable controversy to which the judicial power of the United States was, by the Constitution, expressly extended, should operate to transfer the whole suit to the Federal Court."

Although Congress in 1948 narrowed the category of removable claims, requiring of them a greater degree of disassociation than was true of the "separable controversies" referred to in Barney v. Latham, it still retained power to effectuate a policy against fragmentation

---

30. 341 U.S. at 10 n. 3, 71 S.Ct. 534.

31. Finn v. American Fire & Cas. Co., 207 F.2d 113, 116 (5th Cir. 1953), cert. denied, 347 U.S. 912, 74 S.Ct. 476, 98 L. Ed. 1069 (1954).

32. 28 U.S.C. §§ 1335, 1397, 2361.

33. E.g., Haynes v. Felder, 239 F.2d 868 (5th Cir. 1957); Pan American Fire & Cas. Co. v. Revere, 188 F.Supp. 474 (E.D.La.1960); Chafee, "Federal Interpleader Since the Act of 1936," 49 Yale L.J. 377 (1940).

34. E.g., Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L. Ed. 673 (1921).

35. E.g., Wichita R. R. & Light Co. v. Public Util. Comm., 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124 (1922); Phelps v. Oaks, 117 U.S. 236, 6 S.Ct. 714, 29 L.Ed. 888 (1886).

36. ALI, Study of the Division of Jurisdiction Between State and Federal Courts, §§ 2341–2346 & commentary at 119–159 (Tent. Draft No. 2, 1964).

37. 1a Moore, Federal Practice ¶ 0.163(3) (1961 ed.); 1 Barron & Holtzoff, Federal Practice & Procedure § 105, at 504 (Wright ed.); Cohen, "Problems in the Removal of a 'Separate and Independent Claim or Cause of Action,'" 46 Minn.L. Rev. 1 (1961).

38. ALI, op. cit. supra note 36, § 1305(b), commentary at 85–91, & Supporting Memorandum A at 178–86.

39. 103 U.S. 205, 213, 26 L.Ed. 514 (1881).

of litigation.[40] While the "necessary and proper" clause is not without limitation,[41] it has been applied to supply constitutional authority to support legislative policy where otherwise such authority might be doubtful. Where considerations of convenience and economy of litigation dictated, the expansive "necessary and proper" clause frequently has been relied upon to sustain judicial power beyond the strict limits of Article III, assuming arguendo that the Article commands complete diversity. Barney v. Latham's approval of the Separable Controversy Act of 1875 appears to be such an instance. And the whole notion of removal, nowhere provided for in the Constitution, is itself a creature of Congressional power "[t]o make all Laws which shall be necessary and proper for carrying into Execution * * * all Powers vested by this Constitution." [42] Analogous extensions may be found in the doctrines of ancillary and pendent jurisdiction under which Federal courts adjudicate many kinds of claims for which there is no independent jurisdictional basis rooted in Article III.[43] To the extent that "separate and independent" claims relate to the same transaction or series of transactions and thus involve overlapping items of proof, as in the instant case, retention of them by this Court places no greater strain on Article III than do many accepted applications of the ancillary jurisdiction doctrine. Since the power of Congress to make a Federal forum available to a diversity litigant in Burton's position is unquestioned, this Court is of the view that Congress has the concomitant power to provide that, once the litigant exercises his right to remove, he may be relieved of the burden of multiple trials in different jurisdictions, at least where some degree of duplication is involved.[44] In this connection it might be noted that Section 1441(c) is in some ways a more sensitive instrument to effectuate Congressional policy than was the 1875 provision approved by the Supreme Court in Barney v. Latham. The 1875 statute required retention of the entire case; [45] the 1948 enactment permits remand of nonfederal issues which the Court decides ought not to be tried with the removable matter— a discretion which the Court exercises with respect to the fifth cause of action as noted hereinafter.

■ As to plaintiff's alternative motion addressed to the Court's discretion, it is abundantly clear that, despite the "separate and independent" quality of the second cause of action, at least the first four claims have some common problems. Items of proof may overlap and the same witnesses may be called to testify with relation to all four claims. To splinter the case and to require a separate trial in this Court, and another in

40. The statute, which provides for removal of the "entire case" and for the district court to "determine all issues therein" if it chooses to do so, bespeaks such a purpose. And one of its draftsmen has indicated that such was a purpose. See 1a Moore, Federal Practice ¶ 0.163(3) (1961 ed.).

41. See, e.g., Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 423, 4 L.Ed. 579 (1819).

42. See State of Tennessee v. Davis, 100 U.S. 257, 25 L.Ed. 648 (1880).

43. See Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933) (pendant claim); Moore v. New York Cotton Exch., 270 U.S. 593, 46 S.Ct. 367, 70 L. Ed. 750 (1926) (compulsory counterclaim); Wichita R. R. & Light Co. v.

Public Util. Comm., 260 U.S. 48, 43 S. Ct. 51, 67 L.Ed. 124 (1922) (intervention by co-citizen); Stewart v. Dunham, 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329 (1885); Freeman v. Howe, 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1861) (supplementary suit by co-citizen). Cf. National Mut. Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949); Williams v. Austrian, 331 U.S. 642, 657, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947); Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433 (1934); Siler v. Louisville & N. R. Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909).

44. See ALI, op. cit. supra note 36, at 180 n. 13.

45. Hart & Wechsler, The Federal Courts and the Federal System 1044 (1953 ed.).

**922**

the State Court as to those claims, would needlessly waste the time and effort of all concerned—litigants, witnesses, counsel and courts. The parties are already embroiled in enough litigation here and in California; it would be unreasonable further to proliferate the litigation. Accordingly, the alternative motion to remand the first, third and fourth causes of action is denied. As to the fifth cause of action for a declaratory judgment against Taylor alone, this has no relationship of any kind to the individual claims against Burton, or for that matter to the claims asserted against him and Taylor jointly and severally. The motion for remand of the fifth claim is granted.

### III. THE MOTION TO TRANSFER.

■ Counsel for defendants, on their motion to transfer the action to the Southern District of California, pursuant to Section 1404(a) of Title 28, United States Code,[46] asserts that the question of the date on which suit was brought in New York is a relatively "minor" or "lesser" issue. The Court, to the contrary, considers the issue of controlling significance, since the phrase in the statute "where [the action] might have been brought" has been construed by the Supreme Court to mean at the time the suit was instituted.[47]

This action was instituted on July 9, 1964, in the New York State Supreme Court, New York County, by personal service of a summons upon each defendant. Thereafter, the defendants remained in New York until September 1964, when they went to the Northern

District of California for approximately one month to fulfill a professional engagement.

Service of the complaint was effected upon defendants' counsel in New York City on September 15, 1964. Under New York law the service of the summons, and not the complaint, governs the date both of commencement of suit and the acquisition of jurisdiction.[48] When the suit was brought in New York State on July 9, 1964, neither defendant was amenable to service of process or subject to personal jurisdiction in the Southern District of California, the proposed transferee district, or any other California court, Federal or state (even assuming removal jurisdiction or original diversity jurisdiction as to Taylor). The circumstance that two months later, in September, they were present in the Northern District of California does not alter the situation.

Nor is it of significance, as defendants argue, that since an action may be "commenced" in California by the filing of a complaint,[49] plaintiff "might have" filed a complaint on July 9th and in September have obtained personal jurisdiction over them by service of process in the Northern District of California. Our own Court of Appeals, in Foster-Milburn Company v. Knight,[50] has held that commencement of suit where accomplished by mere filing of a complaint is, absent amenability to process, insufficient to comply with Section 1404(a)'s requirement that plaintiff be able to bring an action in the proposed transferee district. As indicated by Judge Learned Hand, the statute " * * * presupposes that the defendant can be served."[51]

46. The section provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

47. Hoffman v. Blaski, 363 U.S. 335, 80 S. Ct. 1084, 4 L.Ed.2d 1254 (1960).

48. N.Y.C.P.L.R. § 304 provides, in part: "An action is commenced and jurisdiction acquired by service of a summons."

49. See Fed.R.Civ.P. 3; Calif.Code Civ.P. § 350. As to the permissibility of such a delay between filing of a complaint and service of process, see Caribbean Constr. Corp. v. Kennedy Van Saun Mfg. & Eng. Corp., 13 F.R.D. 124 (S.D.N.Y.1952).

50. 181 F.2d 949 (2d Cir. 1950).

51. Id. at 951.

Foster-Milburn's status as authority was substantially reinforced by the Supreme Court's decision in Hoffman v. Blaski.[52] There the Court read the statute's reference to a district "where [the action] might have been brought" to require that plaintiff have an absolute right—"when suit was instituted"[53]— to bring suit in the proposed transferee district, a right not dependent "upon the wish or waiver of the defendant."[54] The Court not only equated the bringing of suit with amenability to service of process, but Justice Frankfurter's dissenting opinion characterized the holding of the majority as "making transfer turn on whether the defendant could have been served with process in the transferee district on the day the action was brought."[55] Contrary to defendants' assertion, Hoffman v. Blaski has not been eroded as controlling authority with respect to the meaning of Section 1404 (a).[56] And the single district court decision, Dill v. Scuka,[57] upon which defendants rely must be read in light of its holding that the defendant there was both a citizen and a resident of the proposed transferee district and obviously amenable to suit in that district.

The Court concludes that the Southern District of California is not a district in which suit "might have been brought" on July 9, 1964, and defendants' motion to transfer is denied.

The defendants' alternative motion to dismiss plaintiff's action under the doctrine of forum non conveniens, termed a "slightly more circuitous route" to achieve transfer based upon defendants' offer to waive jurisdictional defects, is denied.

The motion for a certificate pursuant to Section 1292(b) of Title 28 is likewise denied.

**52.** 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). The text writers have so read the decision. See 1 Moore, ¶ 0.145 (6.–1) at 1790 (1964 ed.) ; 1 Barron & Holtzoff, Federal Practice & Procedure § 86.2 at 416 (Wright ed.) ; Wright, Federal Courts § 44 at 143 (1963).

**53.** 363 U.S. at 343, 80 S.Ct. at 1089.

**54.** Ibid.

**55.** 363 U.S. at 362, 80 S.Ct. at 1099.

**56.** The Court does not so read Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), or Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

**57.** 198 F.Supp. 808 (E.D.Pa.1961).