The CITY OF NEW YORK, Plaintiff,

v.

NEW YORK JETS FOOTBALL CLUB,
INC. et al., Defendants.

No. 77 Civ. 1440 (DNE).

United States District Court,
S. D. New York.

April 14, 1977.

988

W. Bernard Richland, Corporation Counsel, New York City, for plaintiff.

Hardee, Barovick, Konecky & Braun, New York City, for defendant New York Jets.

Carter, Ledyard & Milburn, New York City, for defendants Metropolitan Baseball Club, Inc. and M. Donald Grant.

Donovan, Leisure, Newton & Irvine, New York City, for defendants New Jersey Sports and Exposition Authority.

Simpson, Thacher & Bartlett, New York City, for defendant David Werblin.

Zazzali, Zazzali & Whipple, Newark, N. J., for defendants New Jersey Sports and Exposition Authority and David Werblin.

Sullivan & Cromwell, New York City, for defendants National Football League and Pete Rozelle.

OPINION

EDELSTEIN, Chief Judge:

On March 18, 1977, plaintiff City of New York filed a complaint in New York State Supreme Court, New York County, against

the above captioned defendants. By papers filed in this court March 24, 1977, defendants New Jersey Sports and Exposition Authority [hereinafter NJSEA] and David Werblin removed the state court action to federal court on the ground of diversity of citizenship. The city has now moved this court to remand the entire case to state court. Also before the court is an application by. the City for an order extending a temporary restraining order, issued by the state court, for an additional ten days. The remand motion, raising the question of this court's jurisdiction, is logically prior and will be considered first.

In 1961, the City and the Metropolitan Baseball Club, Inc. [hereinafter Mets] entered into a lease agreement whereby the Mets would play their scheduled home baseball games at Shea Stadium. In 1964 the City and Gotham Football Club, Inc. (later the New York Jets Football Club, Inc.) entered into a lease agreement whereby the Jets would play their scheduled home football games at Shea Stadium. In the fall of 1976, NJSEA began operating Giants Stadium, a football stadium located in what is known as the "Meadowlands" of East Rutherford, New Jersey. The underlying dispute in this lawsuit concerns what rights, if any, the Jets have to play scheduled home football games at Shea Stadium during the baseball season and to play scheduled home football games at a stadium other than Shea.

The complaint sets forth four causes of action.[1] The last three causes of action incorporate by reference the allegations of the first. There is no dispute that the third cause of action against NJSEA and Werblin would be removable on the ground of diversity of citizenship had it been sued upon alone. There is also no dispute that the first cause of action against New York Jets Football Club, Inc. and Leon Hess, the second cause of action against Metropolitan Baseball Club, Inc. and M. Donald Grant, and the fourth cause of action against National Football League and Pete Rozelle would not be removable had they been sued upon alone.

Defendants NJSEA and Werblin contend that the third cause of action is "separate and independent" from the others and that the entire case is, therefore, removable under 28 U.S.C. § 1441(c).[2] The parties seemingly agree that should this court determine that the case was properly removed to federal court, the court's discretion would be best exercised by maintaining the entire lawsuit in federal court and determining all the issues raised therein.

The complaint alleges that NJSEA and Werblin are negotiating with the Jets a lease agreement pursuant to which the Jets would make Giants Stadium its home stadium and would play some number of its home football games at that stadium. The City alleges that these actions NJSEA and Werblin:

> are willfully and deliberately attempting to induce Jets to breach the agreement between plaintiff and the Jets and they have set upon a deliberate and intentional

1. Solely for purposes of familiarizing readers with this action, the causes of action might be characterized as alleging the following: (1) the Jets and Hess have threatened to breach their lease with the City by playing some of their home games at Giants Stadium; (2) the Mets and Grant, by asserting rights and restrictions over the use of Shea Stadium which they do not have under their lease with the City, have interfered with the performance of the Jets' lease with the City; (3) the NJSEA and Werblin have induced the threatened breach of the Jets' lease with the City by negotiating with the Jets for the wrongful purpose of entering into an agreement with the Jets pursuant to which the Jets would play some home games at Gi-

ants Stadium; (4) the NFL has indicated it would approve the transfer of the Jets from New York City to another area and has indicated an intent to schedule home football games at a stadium other than Shea.

2. 28 U.S.C. § 1441(c) (1970) provides:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

effort and design to interfere with the performance thereof.[3]

■ Although the complaint speaks of both inducement of breach of contract and interference with the performance of a contract, the complaint read as a whole indicates that the City is seeking relief solely for inducement of breach. The clear meaning of the third cause of action is that NJSEA and Werblin are being sued for inducing the breach of the lease agreement between the City and the Jets and not for interference resulting in other than breach.[4]

Against the Jets, the complaint alleges a threatened breach by the Jets of their lease agreement with the City and states that the City will suffer irreparable damage if the Jets breach their lease and play home football games outside of New York City.

Defendants present to the court in opposition to the motion for remand five lines of argument pursuant to which they believe the cause of action against NJSEA and Werblin is "separate and independent" from the cause of action against the Jets and that the entire case is removable pursuant to 28 U.S.C. § 1441(c). The court will consider those theories *seriatim* after discussing briefly the background and development of 28 U.S.C. § 1441(c).

■ The 1948 revision of the Judicial Code brought about the inclusion of 28 U.S.C. § 1441(c) as a replacement to the "separable controversy" doctrine as then found in 28 U.S.C. § 71. The congressional purpose behind the change was twofold: (1) effect a simplification of the prior law; and (2) limit removal from the state courts.[5] Consistent with that congressional intent, the requirement of a "separate and independent" cause of action has received a

more restrictive judicial interpretation than the requirement of a separable controversy.[6]

■ Any analysis of removal under section 1441(c) must start with the landmark Supreme Court decision in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). In *Finn*, a single plaintiff sued three defendants in state court seeking recovery for a fire loss. Plaintiff's complaint alleged liability among the three defendants although plaintiff admitted uncertainty as to which one was liable. The diverse companies removed pursuant to 28 U.S.C. § 1441(c). In its opinion, the Court recognized that there may well be separable controversies in a lawsuit covering multiple parties and issues. The Court also recognized that different facts will be relevant to different parties and issues. The Court found, however, that neither separable controversies nor differing facts without more meet the statutory test of a "separate and independent . . . cause of action." The Court concluded that:

> where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under 1441(c).[7]

Although in the years since *Finn* lower courts have considered a wide variety of cases concerning differing facts and legal claims, nothing has occurred to alter the *Finn* test that removal under section 1441(c) is improper where the plaintiff alleges a single injury resulting from an interlocked series of transactions.

■ Before this court defendants first argue that since plaintiff chose to plead

---

3. Complaint at ¶ 45.

4. Recognizing that for purposes of section 1441(c) plaintiff's complaint controls, the court notes that at oral argument on this motion, counsel for plaintiff agreed with this interpretation of the cause of action against NJSEA and Werblin. Transcript of April 5, 1977, at 11.

5. *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 9–10, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

6. 14 C. Wright, A Miller & E. Cooper, Federal Practice & Procedure § 3724 (1976). In fact, this court's study of the 25 reported decisions in the Southern District of New York since 1951 interpreting the removal provisions of 28 U.S.C. § 1441(c) reveals only two cases with a single plaintiff and multiple defendants in which removal was held to be appropriate.

7. *American Fire & Cas. Co. v. Finn*, supra, at 14, 71 S.Ct. at 540.

four separate causes of action, the case is removable under section 1441(c). While plaintiff's pleading does control the court's determination,[8] defendants' contention is without merit and must be rejected. The mere utilization of separate counts or causes of action to plead different legal theories does not determine the question of propriety of removal.[9] The complaint as a whole must be considered. Just as the City's pleading style of incorporating the counts of the first cause of action into the remaining causes of action is not determinative of their interdependence, the City's division of its legal theories into individual causes of action does not create "separate and independent" causes of action.

■ Second, defendants contend that because an allegation of inducement of breach of contract requires different proof than does the question of the breach of contract itself, the two causes of action are "separate and independent." That different proof is required implies only that the factual bases of each cause of action are not entirely identical and does not imply that the claims are "separate and independent." Since the only test correctly to be applied is whether the causes of action all relate to a single wrong complained of by plaintiff and whether that single wrong is allegedly the result of an interlocked series of transactions, this contention of defendants must also be rejected.

Defendants next argue that although the case law is admittedly split[10] on the question of whether allegations of breach of contract and inducement of breach are "separate and independent" causes of action, the law in this district is established in support of their position and the propriety of removal in the case at bar. Defendants rely on Judge Weinfeld's opinion in *Twentieth Century-Fox Film Corp. v. Taylor*;[11] that reliance may well be misplaced.

Judge Weinfeld set forth in that opinion the various categories of cases that have arisen under section 1441(c) including the situation "where one defendant is accused of breach of contract and another is charged with inducing or exploiting the breach." He concluded that the case before him, and upon which defendants rely, "fits none of these categories."[12] This court is skeptical of an argument that Judge Weinfeld intended to resolve this question of law when he explicitly denied having done so.

Nevertheless, the decision in *Twentieth Century-Fox* did find that a claim against a diverse defendant for breach of contract was "separate and independent" from a claim against a non-diverse defendant for inducing the former defendant's breach of contract. That finding of removability under section 1441(c), however, appears to be based primarily on the existence of separate employment contracts between plaintiff and the two defendants.[13] In the instant

8. *Id.*

9. 1A J. Moore, Federal Practice ¶ 0.163[4.–3], at n. 5 (2d ed. 1974).

10. Compare *Griebel v. J. I. Case Credit Corp.*, 285 F.Supp. 621 (D.Minn.1968); *Twentieth Century-Fox Film Corp. v. Taylor*, 239 F.Supp. 913 (S.D.N.Y.1965); *Shelley v. The Maccabees*, 180 F.Supp. 517 (E.D.N.Y.1959); *Allison v. American Airlines*, 112 F.Supp. 37 (N.D.Okla. 1953) with *Mayflower Indus. v. Thor Corp.*, 184 F.2d 537 (3d Cir. 1950); *Gustaveson, Inc. v. Graybar Elec. Co.*, 222 F.Supp. 473 (W.D.Mo. 1963); *Guess v. Kellogg Switchboard & Supply Co.*, 143 F.Supp. 807 (N.D.Cal.1956); *Knight v. Chrysler Corp.*, 134 F.Supp. 598 (D.N.J.1955).

11. 239 F.Supp. 913 (S.D.N.Y.1965). Defendants also rely on *Mattgo Enterprises, Inc. v. Aaron*, 374 F.Supp. 20 (S.D.N.Y.1974). Defendant Werblin, after all papers had been submitted, brought to the court's attention the unreported decision of Judge Brieant in *Don King Productions, Inc. v. Madison Square Garden Corp.*, 76 Civ. 3074 (S.D.N.Y., dated July 30, 1976). Neither of those cases need be discussed here since they merely cite *Twentieth Century-Fox* and add no independent analysis of section 1441(c).

12. 239 F.Supp. at 916.

13. The court notes that the instant case does involve allegations of breach of the Mets' lease as well as threatened breach of the Jets' lease. The allegation of breach of the Mets' lease appears for the sole purpose, however, of supporting the allegation that the Mets have interfered with the performance of the Jets' lease. Moreover, since the Mets are citizens of New York for diversity purposes, the allegations regarding their lease have no effect on the propri-

case, the sole allegation against NJSEA and Werblin is inducing the breach of the lease agreement between the City and the Jets. The City claims no wrong by NJSEA and Werblin except as NJSEA and Werblin's conduct relates to the performance of the Jets' lease with the City. There is not present here, as was the case in *Twentieth Century-Fox*, a distinct wrong pleaded against the diverse defendants.

■ The decision in *Twentieth Century-Fox* also relied upon the determination that the claim upon which removal was based (breach of contract) would succeed or fail independently of the claim of inducement of breach. Even assuming that this court were to adopt as its basis for decision that analysis, in the instant litigation the cause of action upon which removal is based (inducement of breach) is legally dependent upon the result reached in the non-diverse cause of action (breach of contract).[14]

Defendants' reliance on the *Twentieth Century-Fox* decision is, in sum, unpersuasive. The case is distinguishable on the grounds discussed above. To the extent the case is considered to be on point, this court must agree with the commentary that "a strong argument can be made that in permitting removal . . . the district court[s] applied the statute erroneously."[15]

■■ Defendants' fourth contention embodies an attempt to explain away those cases in which allegations of breach of contract and an inducement of breach were present and which were held not removable pursuant to section 1441(c). Defendants argue that all of those cases contain an allegation of an act performed by the relevant defendants in concert and that it is that allegation which allows the conclusion that the lawsuit involves a single wrong and an interlocked series of transactions. Although the City does not use the precise language "in concert," it does allege that NJSEA and Werblin are "negotiating with the Jets for the purpose of wrongfully and illegally entering into an Agreement with the Jets. . . ."[16] That the City's case is directed toward an injury resulting from the alleged interaction of the Jets, NJSEA and Werblin is revealed by the complaint in spite of the absence of particular language. Moreover, section 1441(c) neither requires nor turns upon the inclusion of talismanic language in plaintiff's complaint.[17]

■ Defendants' final contention is that this case, likely to involve local prejudice, is exactly the kind of case for which federal diversity jurisdiction was created. Although the court recognizes that the grant of federal jurisdiction in diversity cases has been traditionally explained in terms of providing foreign parties an impartial national tribunal,[18] the underlying principle remains that federal courts are courts of limited jurisdiction empowered to decide only those matters within the judicial power of the United States and which have been entrusted to them by Congress. The court's jurisdiction in this matter is limited

ety of removing this case pursuant to section 1441(c).

**14.** Under New York law, an essential element of inducing a breach of contract is the breach of contract itself. *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 134 N.E.2d 97, 151 N.Y.S.2d 1 (1956); *Sonnenblick-Goldman Corp. v. Marbella Del Caribe*, 412 F.Supp. 439 (S.D.N.Y.1975); *Valdez v. Ford, Bacon & Davis, Texas, Inc.*, 62 F.R.D. 7 (S.D.N.Y.1974).

**15.** 14 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3724 (1976).

**16.** Complaint at ¶ 44.

**17.** That the court considered this argument by defendants does not indicate a belief that an allegation of concerted activity is necessary in order to avoid pleading "separate and independent" causes of action. No such requirement is implicit in section 1441(c) or in the Supreme Court's articulated test for that section.

**18.** *See, e. g., Bank of the United States v. DeVeaux*, 9 U.S. (5 Cranch) 61, 3 L.Ed. 38 (1809). The sufficiency of this and other justifications for federal diversity has been the subject of substantial and increasing criticism. Perhaps the most eminent writings on this subject are those of Judge Friendly. See H. Friendly, Federal Jurisdiction: A General View 139–52 (1973); Friendly, *The Historic Basis of Diversity Jurisdiction*, 41 Harv.L.Rev. 483 (1928).

by the scope of 28 U.S.C. § 1441(c). Defendants' last argument is more appropriately addressed to the legislative branch than to this court.

■ In light of the foregoing, and applying the "single wrong" test established in *Finn*, the court concludes that the City is seeking relief from the single injury of the threatened breach of the Jets' lease. NJSEA and Werblin have caused no alleged injury to the City other than that which will result from the wrong the Jets are alleged to threaten to commit. Had the City, instead of seeking injunctive relief, prayed for compensatory damages from NJSEA and Werblin for inducing the breach of the Jets' contract, those damages would be measured by the loss to the City resulting from the Jets' breach. That the relief sought was equitable is of no consequence. Moreover, the NJSEA and Werblin and the Jets are not only alleged to have engaged in an interlocked series of transactions; they are alleged to have engaged in negotiations with each other necessarily involving them all.

■ This court has long held to the view that the alleged wrong to the plaintiff is at the heart of the section 1441(c) analysis. In *Fair Oaks Transportation Co. v. Central Manufacturers' Mutual Ins. Co.*,[19] concerning damage to plaintiff's tractor-trailer while parked in a lot, this court stated:

> Here only a single injury is alleged by the plaintiff, the loss of his property; and although he seeks to hold each defendant liable for the entire loss on a different basis, he may recover, if at all only once, to the extent of his loss. Moreover, the crucial facts of this controversy with both defendants are the circumstances of the disappearance of the tractor and trailer from the lot.

Here, the crucial facts of the controversy with both defendants are the circumstances of the threatened disappearance of the Jets from New York City. The cause of action against NJSEA and Werblin for their alleged involvement in that threatened disappearance is not "separate and independent" from the cause of action against the Jets.[20]

The City's motion for an order remanding this case to state court is granted. Having determined that this lawsuit is not within its jurisdiction, the court does not reach the City's application to extend the temporary restraining order.

The Clerk of this Court is directed to mail a certified copy of this opinion and order to the Clerk of the New York State Supreme Court.

So ordered.

19. 127 F.Supp. 507 (S.D.N.Y.1954).

20. Were the court in doubt as to the propriety of this removal, it would resolve that doubt in favor of remand for "it is settled that where the jurisdiction of a removed case is questionable, the District Court should decline jurisdiction." *Zousmer v. Canadian Pacific Air Lines, Ltd.*, 307 F.Supp. 892, 903 (S.D.N.Y.1970), *quoting Winsor v. United Air Lines, Inc.*, 159 F.Supp. 856, 860 (D.Del.1958).