Saxe, Bacon & Bolan, P. C., New York City, for plaintiffs; Roy M. Cohn, Filip L. Tiffenberg, New York City, of counsel.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant Paul A. Johnston; Leon Silverman, New York City, of counsel.

**Delbert W. COLEMAN and WNC Corporation, Plaintiffs,**

**v.**

**Paul A. JOHNSTON, Johnston Industries, Inc., and John Does 1–12, Defendants.**

**81 Civ. 6509 (RWS).**

United States District Court, S. D. New York.

Dec. 22, 1981.

## OPINION

SWEET, District Judge.

The plaintiffs Delbert W. Coleman ("Coleman") and WNC Corporation ("WNC") brought this action against Paul A. Johnston ("Johnston") and J. Johnston Industries, Inc. ("JII") and John Does 1–12 ("the director defendants") in the Supreme Court of the State of New York, County of New York on October 20, 1981 and obtained a temporary restraining order containing provisions, among others, barring Johnston and JII from transferring any assets. The action was removed to this court on the grounds of diversity, the temporary restraint expired, and Coleman and WNC have moved for a remand. The motion will be denied for the reasons set forth below.

Coleman is a citizen of Illinois and the sole shareholder of WNC which is a Delaware corporation with its principal place of business in Chicago. Johnston alleges that he is a citizen of North Carolina and is the sole shareholder and chief executive officer of JII, a Delaware corporation, with its principal place of business in New York. Certain of the director defendants are alleged by Coleman and WNC to be New York residents. Diversity therefore exists between Coleman and WNC on the one hand and Johnston but not between Coleman and WNC, and JII and the director

defendants. At issue therefore is whether JII and the directors are nominal defendants and their joinder is unnecessary, "collusive" or "fraudulent," thereby not defeating diversity. *See Salem Trust Co. v. Manufacturers' Finance Co.*, 264 U.S. 182, 189–90, 44 S.Ct. 266, 267, 68 L.Ed. 628 (1924); *Tedder v. F.M.C. Corp.*, 590 F.2d 115 (5th Cir. 1979); *Saxe, Bacon & Bolan, P.C. v. Martindale Hubbell, Inc.*, 1980–81 Trade Cases ¶ 63,758 at 78,042, 521 F.Supp. 1046 (S.D.N.Y.1981); *Sands v. Geller*, 321 F.Supp. 558, 561 (S.D.N.Y.1971); *American Mfrs. Mut. Ins. Co. v. Manor Invest. Co.*, 286 F.Supp. 1007, 1010–11 (S.D.N.Y.1968); 14 C. Wright, A. Miller & Cooper, Federal Practice and Procedure § 3723 at 606 & n.47 (1976 ed. and 1981 Supp.).

The dispute between the parties centers on an agreement dated April 24, 1981 as extended on May 29, 1981, signed by Coleman, WNC and Johnston, under which Johnston undertook under certain terms and conditions to sell his shares of stock in JII to Coleman and WNC ("the contract"). According to the complaint, on September 9, 1981 Johnston informed Coleman and WNC that he would not perform the contract on the closing date of October 1, 1981 and in fact the closing did not occur. This litigation resulted in which Coleman and WNC seek to compel the transfer of JII stock and to obtain control over the corporation.

The complaint sets forth five causes of action. The first, although initially only against Johnston, in the amended complaint, alleges a claim for specific performance against Johnston and JII. The second cause of action seeks damages against Johnston for his failure to perform the contract. The third, fourth and fifth causes of action are against all the defendants, and the third alleges that "all of the above-mentioned defendants, and each of them were members and agents of an illegal and fraudulent conspiracy the purpose of which was to wrongfully induce Coleman to relinquish to Johnston and Industries [JII] his formula and plan to make Industries [JII] a more profitable and valuable company, thus benefitting Johnston." Certain acts are al-leged to have occurred over the summer in which the individual defendants or some of them participated which led Coleman to make certain disclosures, at a time when the defendants knew that Johnston intended to terminate the contract without transferring his shares of JII to Coleman and WNC. The relief sought under the third cause of action is specific performance and declaration that the shares of JII in Johnston's hands are null and void. The fourth cause of action seeks compensatory damages of $12 million and punitive damages of $30 million. The fifth cause of action seeks an accounting for any moneys paid by JII to Johnston from September 9 to the date of the transfer of the shares.

■ As to the first cause of action, the issue presented is whether or not JII is a nominal or unnecessary party. JII is not a party to the contract, and the contract by its terms deals with the sale of stock held by Johnston. Indeed the only role for the corporation in the event of the success of Coleman and WNC on the merits of the dispute would be to perform the ministerial act of transferring the shares upon the books of the corporation. As counsel for Johnston pointed out, were it otherwise, every dispute over stock ownership would require the presence of the issuing corporation. Fortunately the issue has been faced and resolved by other courts whose decisions are hereby relied upon. *Salem Trust Co. v. Manufacturers' Finance Co.*, 264 U.S. 182, 189–90, 44 S.Ct. 266, 267, 68 L.Ed. 628 (1924); *Kearney v. Dollar*, 111 F.Supp. 738, 745 (D.Del.1953); *American Mfrs. Mut. Ins. Co. v. Manor Invest. Co.*, 286 F.Supp. at 1010–11. Since JII is not a necessary party as indicated by these authorities, its presence does not defeat diversity on the first cause of action.

The defendants also seek to defeat the remand with respect to the third, fourth and fifth causes of action by invoking and relying upon the terms of 28 U.S.C. § 1441(c) which states as follows:

Whenever a separate and independent claim or cause of action, which would be

removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

This provision has been construed by the Supreme Court in *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 13, 71 S.Ct. 534, 539, 95 L.Ed. 702 (1957), which held removal improper where a diverse cause and a non-diverse cause were brought to redress one single wrong arising from an interlocked series of transactions. The meaning of separate and independent as interpreted by the Supreme Court has been the subject of a thorough analysis by one of the most respected members of this court, The Honorable Edward Weinfeld, in an action that presented much the same sort of issue, *Twentieth Century-Fox Film Corp. v. Taylor*, 239 F.Supp. 913 (S.D.N.Y.1965). There one wrong alleged to have been committed by Richard Burton under a contract with Twentieth Century Fox was sufficient to permit removal of an entire action despite the presence in the complaint of other wrongs committed by the defendant jointly with Elizabeth Taylor, whose presence would have otherwise defeated diversity. Burton's action was held to be separate from and independent of the claims against Taylor and the joint claims against Burton and Taylor, since the diverse claim was for breach of contract and the non-diverse claims were for inducing the breach. No distinction has been stated to this court that would make Judge Weinfeld's reasoning in *Twentieth Century* inapplicable here where one wrong relates to the dealings between Coleman and Johnston and the non-diverse asserted joint wrongs of breach and conspiracy to misappropriate business plans seek recovery for different injuries. *See also Shelley v. The Maccabees*, 180 F.Supp. 517, 518 (E.D.N.Y.1959).

In *City of New York v. New York Jets Football Club, Inc.*, 429 F.Supp. 987 (S.D.N.Y.1977), The Honorable David Edelstein distinguished *Twentieth Century* by carefully noting that in the situation presented in *New York Jets* the breach of contract cause, the non-diverse cause, was not by its nature separate and independent from the diverse cause, the inducement to breach because the diverse cause was dependent on the non-diverse cause and would not occur without the non-diverse cause.

■ The allegedly non-diverse causes of action, three, four and five, are indeed separate from and independent of the breach of contract and specific performance actions against Johnston in causes one and two. First of all the named defendants in the last three causes of action could conceivably be held liable for a conspiracy to defraud, which is the essence of the causes set forth, even if Johnston was not liable for a breach of contract, authorities cited, given the separate and independent nature of the well pleaded claims against Johnston, it does not seem fruitful to deal within the pleading issues in the context of the motion to remand, notwithstanding the recognition that only well pleaded matters should give rise to or be considered with respect to jurisdictional requirements. *See generally In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Lit.*, 467 F.Supp. 227, 250–51 (W.D.Tex. 1979) (fraud pleading requirements); *In re Haven Industries, Inc.*, 462 F.Supp. 172, 182–83 (S.D.N.Y.1978) (fraud pleading requirements); *Gross v. Diversified Mortgage Investors*, 438 F.Supp. 190, 194–95 (S.D.N.Y.1977) (dismissal for failure to properly plead); *Altman v. Knight*, 431 F.Supp. 309, 314 n.4 (S.D.N.Y.1977) (fraud pleading requirements).

For these reasons the motion to remand will be denied. A pretrial conference will be called to determine discovery and trial schedule.

IT IS SO ORDERED.